# CHARLESTON.

ROHRBOUGH *v.* THE UNITED STATES EXPRESS COMPANY.

Submitted September 9, 1901. Decided November 23, 1901.

1. DEMURRER TO EVIDENCE—*Review—Judgment.*
    In reviewing a judgment in a case tried by the court in lieu of a jury, the appellate court treats it as a case standing on a demurrer to the evidence. (p. 152).

2. AGENT—*Performance of Duties.*

Where an agent is commissioned to do any act, nothing being said as to the mode of performance, he has an implied power to perform his duties in accordance with any recognized usage or mode of dealing.   (p. 153).

3. AGENT'S POWER—*Principal Bound by.*

An agent has no power to delegate his agency to another, or to sub-let it; but he may employ clerks, whose acts, if done in his name, and recognized by him, either specially, or according to his usual mode of dealing with them, will be regarded as his acts, and, as such, binding on the principal.   (p. 153).

4. AGENT—*Must Act for Benefit of Principal.*

The powers of an agent are to be exercised for the benefit of his principal only, and when he acts otherwise, with the knowledge and participation of the person relying upon his unauthorized act, his principal is not bound by such act.   (p. 156).

5. AGENT—*Power not Delegated.*

Where an agent of an express company entrusts to another in the office with him, but not in the employ of the express company, the transaction of its business, under his supervision and control, and without the knowledge of the company, and such employe of the agent goes out and solicits deposits of money with him in exchange for money orders of the company, and so receives money and issues such orders, without requiring payment of the usual fees or charges upon such orders, and absconds with the money, the person making such deposit, does it knowing such issue of orders is beyond the power of the agent for whom such employe professes to act, and he cannot recover from the company on the orders.   (p. 157)..

6. AGENTS—*Instructions Must be Followed.*

If an agent disregards specific instructions as to the mode of executing his powers, in respect to a matter as to which he is held out to the public by his principal as having full power and authority, his acts are, nevertheless, binding upon his principal as regards third parties having no notice of such instructions.   (p. 155).

Error to Circuit Court, Barbour County.

Action by A. F. Rohrbough against the United States Express Company.  Judgment for plaintiff, and defendant brings error.

*Reversed.*

A. G. DAYTON and FRED O. BLUE, for plaintiff in error.

M. PECK, for defendant in error.

POFFENBARGER, JUDGE:

This is an action brought by A. F. Rohrbough against the United States Express Co. before a justice of the peace of Barbour County in July, 1898, for the recovery of two hundred dollars, the amount of four fifty dollar express money orders, alleged to have been issued by said company at its office in Belington in said county and five dollars protest fees on the same. The summons is as follows:

"To any constable of Barbour County, Greeting:

You are hereby commanded in the name of the State of West Virginia to summon the United States Express Company to appear before me, or some other justice of said county, at my office in Philippi in Philippi district, on the 11th day of July, 1898, at 10 o'clock A. M., to answer the complaint of A. F. Rohrbough in a civil action for the recovery of money due by four express money orders of fifty dollars each and five dollars protest fees, in which the plaintiff will demand judgment for two hundred and five dollars and twenty cents, exclusive of interest and costs.

Given under my hand this 2d day of July, 1898.

W. G. KEYS, J. P."

On the return day the defendant appeared specially and moved to quash the writ which motion was overruled. The case was then continued for one week, and on the 18th day of July, the parties again appeared and the defendant filed pleas, verified by the oath of its agent, denying that the orders sued upon are the orders of the defendant. After hearing the evidence, the justice rendered a judgment in favor of the plaintiff for two hundred and six dollars and thirty cents. The defendant appealed and upon the trial in the circuit court, without a jury, the court found for the plaintiff and rendered judgment in his favor for the sum of two hundred and thirty-four dollars and fifty-three cents, being the amount of the judgment rendered by the justice with the interest and costs, until the time the appeal was taken, and damages as provided by law and the costs in the circuit court. The court having overruled the motion of the defendant to set aside the finding and judgment and grant a new trial, the defendant took a bill of exception containing the evidence as certified by the court, and, upon its petition, a writ of error was allowed.

In *Weimer* v. *Rector,* 43 W. Va. 735, this Court holds that a

misnomer in a justice's summons is amendable, and is waived and cured by appearance and appeal in the action. In *Thorn* v. *Thorn,* 47 W. Va. 4, this Court decided that "An appeal by a party to a cause in a justice's court operates as an appearance and as a general rule the irregularities in the proceedings before the justice are waived by an appeal." In view of these principles the assignment, of error based upon the overruling the motion to quash the writ, appears to be not well taken.

The evidence shows that the express company had its office in the railway station building at Belington and J. V. L. Thrall was the agent of said company and also of the Adams Express Co. and of the B. & O. R. R. Co. and the W. Va. Central and Pittsburg R. R. Co. There were three other men working in the office, Darl Elliott, J. M. Parsons and ——— Scroll. Scroll was a telegraph operator, employed by the W. Va. Central and Pittsburg R. R. Co., and "A general helper in the office" and attended to the express business for Thrall. He issued money orders and signed Thrall's name to them in the space provided on the orders for countersigning them. The instructions and rules of the company required the agent in countersigning money orders to subscribe his name personally, but in this instance Thrall had permitted Scroll to attend to the business for probably a year and to sign his name. The evidence does not show that the company had any knowledge of the fact that its business was being so transacted at that place. On the 10th day of June, 1898, the plaintiff deposited two hundred dollars at the office at Belington and took the four money orders in question in lieu thereof, intending to send them to the bank at Grafton. Scroll received the money and issued the orders, signing Thrall's name. Whether Scroll ever put the money into the safe or the money drawer of the company is not known, but, on the next day, he disappeared and the money in question as well as considerable other money obtained in the same way disappeared also. It seems that he reported about the time he left that the office had been robbed. The rate of charges printed on each money order was eighteen cents, making seventy-two cents on the four orders in question. This Scroll did not collect and Rohrbough says he had frequently purchased money orders there and that Scroll had never charged him any fees on them.

Upon this state of facts the defendant insists that it is not liable for the amount claimed upon the orders and relies upon

the principles of law holding that power conferred upon an agent is based upon the special confidence or trust which the principal has in the agent's ability or integrity and that such power or authority, express or implied, cannot be delegated by the agent so as to bind the principal. 1 Am. & Eng. Ency. Law, 972. A further contention is that because the fees were not charged and collected, the act of Scroll in issuing the orders was not the act of Thrall, the agent, or the act of the company, even if Thrall could have delegated his authority, and also that the express company is not responsible for the appearance of authority on the part of Scroll caused by Thrall permitting him to attend to his business, for the reason that the company had no notice of the fact that he was so acting. In support of this, 1 Am. & Eng. Ency Law, (2d Ed.) 900, is cited. Another contention is that it was the duty of Rohrbough to ascertain the extent of the agent's power and authority in dealing with him, and as bearing upon these propositions, a number of cases is cited including *Curry* v. *Hale,* 15 W. Va. 867; *Dyer* v. *Duffy,* 39 W. Va. 148; *Rosendorf* v. *Poling,* 48 W. Va. 621, (37 S. E. 555).

In reviewing a case tried by the court in lieu of a jury, the appellate court treats it as standing on a demurrer to the evidence. *State* v. *Miller,* 26 W. Va. 106. In determining whether there is sufficient evidence to sustain the finding and judgment, it becomes necessary to ascertain the general principles of law governing cases of this kind.

"An agent who has a bare power or authority must execute it himself and can delegate his authority to no other." 1 Am. & Eng. Ency. Law, 368. But there is another principle of law laid down in *Titus & Scutter* v. *Cairo & F. R. R.,* 46 N. J. L. 398, which allows some latitude to agents of that class and materially qualifies and restricts the general proposition. Where a known usage of trade justifies, or necessity requires, the employment of sub-agents, such agents may be employed, but only to perform ministerial acts. The agent himself must determine by his own judgment and discretion what should be done and he may then authorize persons to carry into effect the purposes of his employment. He cannot, however, turn his principal's business over to the judgment and discretion of another and bind his principal by the acts and conduct of the latter. "The agent is bound to follow faithfully the instruction of his principal, and act within the scope of his authority." 1 Am. & Eng. Ency. Law, 369. But

this rule has its qualification also. "Where a deviation from the strict performance of his authority is due to necessity or unforeseen emergencies which are themselves not due to the agent's default," the rule must yield. And "Where the agent is commissioned to do any act, nothing being said as to the mode of performance, he will have an implied power to perform his duties in accordance with any recognized usage or mode of dealing." 1 Am. & Eng. Ency. Law, 370, 371. This Court lays down the following proposition with reference to insurance agents, whose duties are very similar to those of express companies, in point 7 of the syllabus in *Deitz* v. *Insurance Co.*, 33 W. Va. 526: "No insurance agent can be expected by his company to attend to all the details of his business in person; the company must and should be construed to anticipate the employment of clerks to attend to the office, when the agent is absent or sick; when the agent's clerk is authorized and entrusted to examine property, and write out a policy thereon, his contract and knowledge are the contract and knowledge of the agent, and any accidental mistake which he may make, is the mistake of the agent, and will be corrected in a court of law in an action on the policy."

A general proposition of law laid down in 1 Am. & Eng. Ency. Law (2d Ed.) 978, and well supported by decided cases, is that "When an agent is engaged to perform acts of a purely ministerial or mechanical character, or acts which do not call for the exercise of judgment, discretion, or skill, in respect to acts other than such as are ministerial, he may authorize another to perform them." At page 978 it is said "The same principle is applicable in case of agents empowered to execute bills of exchange to sign subscription papers, to sign insurance policies, to contract risks, to deliver policies and renewals, to collect premiums and to give security therefor." This is supported by *Sayre* v. *Sayre*, 7 Cal. 535; *Lingenfelper* v. *Phoenix Insurance Co.*, 19 Mo. App. 252. In the latter case the court decided that "An agent has no power to delegate his agency to another, or to sublet it. But he may employ clerks and sub-agents, whose acts, if done in his name, and recognized by him, either specially, or according to his usual mode of dealing with them, will be regarded as his acts, and, as such, binding on the principal." The transaction out of which this case grows is more in the nature of banking business than express business, although it is extensively done by express companies. 23 Am. & Eng. R. R. Cas.

572. In view of this the general principle announced in 1 Am. & Eng. Ency. Law (2d Ed.) is clearly applicable to this case.

The express company had another agent whose duty it was to travel over a certain territory and inspect all the offices of the company in said territory and check up the books and accounts of the agents. This man had from time to time inspected the Belington office. He must have known that Thrall, being the agent of another express company and two railroad companies and having three other persons in the office, would find it necessary to entrust the transaction of more or less of the business to persons other than himself. The employment of clerks and assistants under such conditions and circumstances is usual and seems to be necessary. Scroll was acting in the presence and under the very eye of the duly appointed agent. He was in the office of the agent transacting the business of the company. He did this for a year or more, Thrall himself doing very little of the business. In obtaining the four money orders in question, Rohrbough simply transacted business in that office as he had done on several prior occasions. Aside from the fact that he paid no fees as he ought to have done and as he must have known he should have done, there is nothing in the circumstances and facts of the case calculated to suggest to him that there was anything irregular or unusual in the mode of transacting business in that office. It is true that the company reposed its confidence and trust in Thrall, the agent, and had nothing to do directly with Scroll, but the agent in charge of the office of the company permitted these orders to go out in exchange for Rohrbough's money. Thrall had not abandoned the office or his agency. He was still in charge and to all appearances the business of the company was conducted in obedience to his judgment, discretion and control, but executed in its details in a ministerial way by an assistant, just as is usual in any other office in which considerable business is done. The order says on its face that it must be countersigned by the agent, but not that he shall sign his name personally. That direction is contained in a set of rules, furnished the agents by the company, which are not made public and of which parties dealing with them have no notice. Moreover, they relate not to what the agents may do, but how they may execute their powers. If they related to the extent of the powers or authority of the agent to contract, the question would be a more serious one. The company had put Thrall in control of its

business and held him out to the public as its agent, clothed with all the authority usually pertaining to such agencies, and without notifying the public in any way that it required him to personally sign his name to the orders, and Rohrbough had no notice of the requirement.

"A principal is bound by the acts of the agent, whether general or special, within the authority he has actually given him, which includes not only the precise act which he expressly authorizes him to do, but also whatever usually belongs to the doing of it, or is necessary to its performance. Beyond that he is bound by the acts of the agent within the apparent authority which the principal himself knowingly permits the agent to assume, or which he holds the agent out to the public as possessing." 1 Am. & Eng. Ency. Law (2d Ed.) 988. The company did not specifically hold Thrall out to the public as having authority to allow another person to sign his name to the orders, but it did so hold him out as having authority to issue the orders and that includes countersigning them, and did not make public the specific instruction to personally sign them. If an agent disregards specific instructions as to the mode of executing his powers, his acts are, nevertheless, binding upon his principal as regards third parties having no notice of such instructions. 1 Am. & Eng. Ency. Law (2d Ed.) 994; *Edwards* v. *Shaffer,* 49 Barb. (N. Y.) 291; *Watertown Steam Engine Co.* v. *Davis,* 5 Hous. (Del.) 192. So, if the case turned solely upon the failure of Thrall to personally sign the orders and his permitting Scroll to sign his name and to do the other ministerial acts of receiving the money and issuing the orders, the case would be for the plaintiff.

There are, however, other facts to be considered. Rohrbough says Scroll charged him no fees on the money orders and that he had been in the habit of obtaining them at that office from Scroll without paying fees. He was a merchant and deputy sheriff of the county and did his banking business at Grafton, and sent his remittances there in the form of United States Express money orders. He further says Scroll had been in the habit of coming to him and asking him to send his money in that way, and whenever he wanted to send money to the bank to give it to him (Scroll) and take an express money order for it. Scroll did this on several occasions, and just before the orders in question were issued, probably the day before, Scroll went to Rohrbough and

asked him what amount of money orders he could take, and was informed that he could take three hundred and eighty-five dollars worth. On the next morning Rohrbough went to the office and obtained the orders sued on here, but as to the other one hundred and eighty-five dollars the evidence is not clear. Whether orders for that sum were issued does not appear, but it is referred to in that connection in the evidence.

Counsel for plaintiff in error insist that as this transaction was not for the benefit of the company, no fees having been paid, the act is not binding upon the company, and would not have been if it had been performed by Thrall himself, the duly appointed agent of the company. In this connection *Stainback* v. *Bank,* 11 Grat. 269, and other similar cases are relied upon, but they are not exactly in point. In *Stainback* v. *Bank,* the agent had a power of attorney to draw, endorse, and accept bills, and to make and endorse notes negotiable at a particular bank, in the name of his principal, and, having such authority, he endorsed a bill in the name of his principal for the benefit of himself. In *Bank* v. *Aymar,* 3 Hill (N. Y.) 262, the agent having power to endorse promissory notes, bills of exchange and drafts for his principal, endorsed notes for the accommodation of another firm. In *Stainer* v. *Tysen,* 3 Hill (N. Y.) 279, the agent had authority to draw and endorse checks, notes and bills of exchange in the name of his principal, but made and delivered the note in question in the name of his principal in compromise and satisfaction of a debt of his own. The cases, therefore, are very different from the one under consideration. There is a general principle of law, however, which requires the act of the agent to be for the benefit of his principal. 1 Am. & Eng. Ency. Law (2d Ed.) 1032, 1034. In *Adams Express Co.* v. *Trego,* 35 Md. 47, the court said: "It is a universal principle in the law of agency that the powers of the agent are to be exercised for the benefit of the principal only and not of the agent or third parties. A power to do all acts that the principal could do, or all acts of a certain description, for, and in the name of the principal, is limited to the doing of them for the use and benefit of the principal only as much as if it were so expressed." But the circumstances of that case are very different from those of the case in hand. The point settled there was that an agent of the company has no right to engage in and carry on a business in competition with that which he had been employed to foster and

promote.  However, Rohrbough did not put himself within the
condition necessary to establish a duty or obligation on the part
of the company toward him.   Why should it transmit his money
to Grafton, taking the risk of loss, without any compensation
whatever?   The fact that such orders had been issued to him
without the payment of fees and the further fact that Scroll was
in the habit of coming to him and inviting him to turn his money
over to him in exchange for such orders, are circumstances well
calculated to impress upon him the fact that Scroll, in some
way or by some means, was transacting that business, not in the
interest of the company, but in the interest of himself or some
other person.   It must have been apparent to him that the agent
had no authority to make such a contract on behalf of his prin-
cipal.   The express company, like every other business institu-
tion, takes upon itself risks and responsibilities, not for the mere
accommodation of the people, but for profit, and that profit arises
from its charges for transporting such articles as are committed
to it for that purpose.   In issuing orders purporting to bind the
company to transport money, without receiving or charging any
compensation for the service, the agent, (and the act of Scroll
was the act of the agent, if he authorized it), with the knowledge
of Rohrbough, acted in excess of his authority and beyond its
scope.   If Rohrbough had not been a party to the transaction
and had not known that the agent was acting in excess of his
powers, he might hold the company responsible to him.   But he
was a party to it and did know of the failure of the agent to act
within the limits of his powers.   Had these orders passed into
the hands of a third party who knew nothing of these circum-
stances the case would be on a different footing, but it comes here
as a matter between the original parties and must be settled upon
the principles of law governing their conduct and fixing the
status of the matter between them.   As has been intimated, Rohr-
bough had knowledge of conduct on the part of Scroll, which was
well calculated to arouse a suspicion on the part of any ordinarily
prudent man, and sufficient to deter him from transacting any
business with him.   He must have regarded, as unusual and as
importing infidelity to the company, the conduct of Scroll in
coming to him repeatedly and soliciting him to turn over money
to him in exchange for orders of the company, without requiring .
payment of the ordinary charges thereon.   It does not appear
that Thrall, the agent, knew anything of this misconduct on

the part of Scroll, and Rohrbough seems to be the only one of the interested parties who did know anything about it.

For these reasons the judgment of the circuit court is erroneous. The evidence is not sufficient to sustain its finding and judgment, and as the principles, governing cases which stand in this Court on demurrer to evidence, apply here, the judgment must be reversed, and judgment for the defendant must be entered.

BRANNON, PRESIDENT:

I do not think that the company is liable for Scroll's acts.

*Reversed.*