# CHARLESTON.

J. A. MEADOWS *v.* AMERICAN EAGLE FIRE INSURANCE CO. *et al.*

(No. 5936)

Submitted November 22, 1927.    Decided November 29, 1927.

1. PRINCIPAL AND AGENT—*Agent Must Personally Perform Such Duties of His Agency as Require Judgment and Discretion; Agent May Delegate Purely Ministerial Details.*

   An agent must personally perform such duties of his agency as require judgment and discretion. He may, however, delegate purely ministerial details. (p. 582.)
   (Agency, 2 C. J. §§ 342, 348.)

2. INSURANCE—*To Make Valid Insurance Contract, Minds of Insurer and Insured Must Meet on Every Essential Element Thereof.*

   In order to make a valid insurance contract, the minds of the insurer and the insured must meet on every essential element thereof. (p. 583.)
   (Fire Insurance, 26 C. J. 342; Insurance, 32 C. J. § 180.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Appeal from Circuit Court, Berkeley County.

Suit by J. A. Meadows against the American Eagle Fire Insurance Company and others to recover insurance. From a decree for plaintiff, defendant appeals.

*Decree reversed; bill dismissed.*

*Steptoe, Maxwell & Johnson* and *James M. Guiher,* for appellant.

*Campbell & Hannis* and *Kilmer & Byrer,* for appellee.

HATCHER, JUDGE:

On June 20, 1925, the plaintiff purchased at public auction from the administrator of W. H. Miller, deceased, an untenanted farm of 125 acres at the price of $895.00. This farm had been unsuccessfully hawked at two other auctions. On the farm were some old buildings, on which the administrator was carrying $1,300.00 fire insurance. Meadows and the administrator notified H. L. Alexander, an insurance agent, about June 27th of the sale to Meadows, and arranged that the policy should be cancelled in the name of the administrator and reissued to Meadows. Meadows then stated to Alexander that the insurance on the Miller buildings was not enough, and that he would want more, but did not say what amount he wanted.

On July 1st Meadows went to the office of Alexander, who was out of town. Meadows gave to a clerk in the office valuations on the Miller buildings totalling $2,315.00 and requested insurance for that amount. The clerk filled out, according to Meadows' valuations, one of defendant's policy forms, which she placed on Alexander's desk, but to which his attention was not called. Another policy in favor of Meadows was also on Alexander's desk awaiting his signature. It was a renewal of $1,400.00 insurance on the home of Meadows, which was in the same vicinity as the Miller farm. The description of the property insured was practically the same in each policy. Meadows returned to Alexander's office on July 3rd. Under the impression that the policy for $1,400.00 was on the Miller buildings, Alexander signed and delivered it to Meadows. Believing that the policy delivered was on the

Miller buildings and for $2,315.00, Meadows accepted it. On the afternoon of that same day the Miller property burned. Meadows reported to Alexander on the day following that the policy for $1,400.00 was not on the Miller buildings, and demanded the $2,315.00 policy on that property. Later Alexander discovered the $2,315.00 policy but refused to sign and deliver it. This suit was brought by Meadows to recover of defendant $2,315.00 as insurance on the Miller property. The lower court found in favor of plaintiff.

Lenore Smaltz, aged nineteen years, was Alexander's clerk. Testifying for plaintiff, she stated that her duties consisted in sending out bills, taking in money and writing up policies; she always gave the policies to Mr. Alexander to approve and countersign, unless he had given her special authority to do so; she did not know whether she had authority to make an insurance contract with Meadows; Alexander had given her no special authority to execute the policy on the Miller property; she expected him to approve that policy; but he reserved the right to change and at times did change the amount of insurance and make other changes in policies which she prepared; and she did not discuss with Meadows his valuations, but simply told him she "would write the policy up".

Plaintiff contends that the evidence of Miss Smaltz demonstrates that she had full authority to represent Alexander, and that her acts effected an insurance contract between the defendant and himself, citing *Rohrbough* v. *Ex. Co.*, 50 W. Va. 148, with other cases. The *Rohrbough* case holds that while an agent has no power to delegate his agency to another, he may employ a clerk "whose acts if done in his name and recognized by him * * * will be regarded as his acts, and as such binding on the principal". The facts here do not bring it within the cases cited by plaintiff. The act of Miss Smaltz in preparing a policy which increased the risk on the Miller property was never "recognized" by Alexander. Besides, under the express declaration of the *Rohrbough* case (p. 152), delegation of an agent's authority is permitted only as to ministerial acts. "An agent who has a bare power or authority must execute it himself, and can delegate his authority to no other." 1 Am. & Eng. Ency. Law 368. But there is

another principle of law laid down in *Titus & Scutter* v. *Cairo & F. R. R.*, 46 N. J. L. 393, which allows some latitude to agents of that class and materially qualifies and restricts the general proposition. Where a known usage of trade justifies, or necessity requires, the employment of sub-agents, such agents may be employed, but only to perform ministerial acts. The agent himself must determine by his own judgment and discretion what should be done, and he may then authorize persons to carry into effect the purposes of his employment. He cannot, however, turn his principal's business over to the judgment and discretion of another and bind his principal by the acts and conduct of the latter.''

In the *New Jersey* case above referred to, the court approved an instruction which stated: ''It is a maxim of the law that delegated power cannot be delegated; the delegate cannot delegate; he may use others in the accomplishment of particular transactions which he directs, but he cannot grant to the discretion of others that which was entrusted to his discretion.'' See also 2 C. J. 685; 21 R. C. L. 860. The determination by an agent of the amount of insurance to place on property is an act involving both trust and discretion. Therefore such determination cannot be delegated. Even if the acts of Miss Smaltz be held to constitute assent by her to the valuations named by Meadows, such assent was beyond her authority and does not bind the defendant. Meadows' transactions with her amount to no more than a bare request or proposal by him that the valuations on the Miller buildings be increased to $2,315.00. That proposal was not known to Alexander prior to the fire and was never acceded to by him. It is true that plaintiff and Alexander attempted to consummate an insurance contract. Plaintiff thought Alexander had accepted his proposed valuations. Alexander accepted what he thought plaintiff had proposed. Both were mistaken. There was no meeting of the minds, and consequently there is no contract. A contract of insurance, like any other contract, must be based on a mutual agreement. ''The contract of insurance is to be tested by the principles applicable to the making of contracts in general. The terms of the contract must have been agreed upon. If the contract is incomplete

in any material particular * * * it is of no binding force.''
*Clark* v. *Ins. Co.,* 89 M. E. 26. *McCully's Admr.* v. *Ins. Co.,*
18 W. Va. 782; *Hallaner* v. *Fire Assn.,* 83 W. Va. 401. ''If
the parties have not agreed on * * * the amount to be paid
in the event of a loss, * * * whatever may have been the
negotiations or propositions passing between them, these have
not reached the form and obligation of a subsisting contract.''
16 A. & E. Ency. Law 849. ''There must be a meeting of
minds upon all the essentials of a valid contract of insurance.
If any of the material details remain to be determined, the
contract is not complete. Concurrence of minds is essential.
The impressions of one alone of the parties is insufficient. In
brief, nothing should be left open for future determination.
The assent must be mutual, since this meeting of the minds
is vital to the life of the contract.'' Joyce on Insurance, sec.
45, p. 209. Cooley Briefs on the Law on Insurance, 411.
The fact that parties suppose they have agreed, when in
reality they have not agreed as to an essential element of the
contract, does not affect the above rule The minds of the
parties must wholly meet, not partially meet. The agree-
ment must be integral not fractional. The unity of the con-
cordance must be reached by the parties, not imposed by the
court. A court is no oracle to divine assent where assent
is wanting. *Ins. Co.* v. *Young's Admr.,* 23 Wal. 85 (107-8).

In *Costello* v. *Ins. Co.,* 133 Wis. 361, the plaintiff applied
for insurance for one year. The defendant issued a policy
for three years. Before plaintiff knew of the change in the
term or had recived the policy a fire occurred. Acceptance
of the policy by the plaintiff after the fire, was held not to
complete the contract. An owner of goods in a warehouse
applied for insurance thereon. The insurance company under-
stood the application to be for insurance on goods of the owner
in another warehouse and so wrote the policy. It was held:
''There was no meeting of the minds of the parties giving
rise to a contractual relation between them so as to render
defendant liable upon the loss by fire of the goods sought to
be insured.'' *Stricker* v. *Understock,* 200 Ill. App. 20. In
*Sanders* v. *Cooper,* 115 N. Y. 279 (288), 12 Am. St. Rep. 801,
a like holding was made where a policy was placed on a

different house from the one for which insurance was sought, the court saying, ''There must be a meeting of minds between the parties to a contract before a contract is formed.'' Cooley, *supra,* page 413, cites one case as apparently opposing this view. His digest of that case is as follows: ''On the other hand, in *Home Ins. Co.* v. *Adler,* 77 Ala. 242, where the insured understood the contract was for a policy for $2,000 entirely on merchandise, while the agent understood the agreement to be for $1,500, of which $300 was on furniture, the court said that *the discrepancy* did not show that there was no agreement.''. That statement of the case, however, is not complete. The court found in favor of Adler for $1,500.00 with interest. Its finding is based entirely on testimony that while Adler wished insurance on his merchandise for $2,000.00, Kayser, the agent of the defendant, was unwilling to insure it for more than $1,200.00, but would also insure Adler's furniture for $300.00; that thereupon, according to the admission of Kayser, Adler *left it to him* as to the amount of the risk and how it was to be placed. The use of the word ''discrepancy'' in connection with that case is therefore a misnomer, as Adler agreed in advance to whatever amount of insurance Kayser should place on his property.

Other grave objections to plaintiff's right of recovery are presented by defendant. But as plaintiff's suit fails for want of a contract, further discussion is unnecessary. The decree of the lower court is accordingly reversed, and the plaintiff's bill dismissed.

*Decree reversed; bill dismissed.*