GUSSIE M. THORNTON, *Admx., etc. v.* NATIONAL COUNCIL JUNIOR ORDER UNITED AMERICAN MECHANICS

(No. 6924)

Submitted April 21, 1931.   Decided April 28, 1931.

*Via, Hardwick & Quinlan,* for plaintiff in error.
*John E. Jenkins,* for defendant in error.

HATCHER, JUDGE:

This case is here upon a demurrer to the evidence. The facts proven are as follows: On December 6, 1927, Joseph B. Thornton, of Huntington, West Virginia, who was a member of the local council of the defendant, was examined by Dr. F. A. Fitch, defendant's local examining physician, and on the following day H. A. Davis, insurance agent of defendant, secured Thornton's application for a policy of $1,000 which, with the report of Dr. Fitch, he mailed to Dr. J. H. Junghans at Washington, D. C. Davis also collected conditionally from Thornton, on that day, $2.50 as the premium on the policy for the first month. The connection of Dr. Junghans with defendant does not appear; but Davis says he mailed applications to Dr. Junghans because the latter had requested it. Davis was furnished with stamped letters addressed to Dr. James L. Cooper of Fort Worth, Texas, to be used in communications to the latter, who was chief examiner of defendant and upon whose approval of such applications the policies were issued. T. E. Dunkle, superintendent of mails at Huntington, testified that a letter mailed from Huntington, in the month of December, should reach Fort Worth, Texas, within three days. Dr. Junghans received the application on December 13th at Parkersburg, West Virginia, (how it arrived there does not appear) and forwarded it to Dr. Cooper the next day. Thornton died near midnight of December 15th. Dr. Cooper approved the application on December 16th, the policy to become effective at noon of that day (by rules and regulations of defendant). Thornton's wife, Gussie M., received the policy on December 20th. She and her mother-in-law were named as beneficiaries both in the application and the policy.

This action is brought by Mrs. Thornton, as administratrix of the estate of her husband. She claims damages to the estate by reason of delay in forwarding the application to Dr. Cooper. The jury was instructed if it found for plaintiff,

to assess the damages at $1,000. It so found and the trial court determined the law on the evidence to be for plaintiff.

This action is described in appellee's brief as "a tort action for negligent delay of the defendant in forwarding the application for acceptance or rejection." The brief expressly denies that this is an action on the policy and explains that the policy was brought into the case only to show that the applicant was an acceptable risk. The brief cites decisions from Kansas, Iowa, Colorado, and Nebraska, which uphold the right of recovery in such actions. See *Boyer* v. *Ins. Co.*, 86 Kan. 442; *Duffy* v. *Banker's Ass'n*, (Iowa) 139 N. W. 1087; *DeFord* v. *Ins. Co.*, 75 Colo. 146; *Strand* v. *Ins. Co.*, (Neb.) 213 N. W. 349. The brief cites cases from Oklahoma and Washington, which permit recovery for such delay in actions founded in contract though sounding in or nominally laid in tort. See *Security Ins. Co.* v. *Cameron*, 85 Okla. 171, 27 A. L. R. 444; *Dyer* v. *Ins. Co.*, 132 Wash. 378. It also cites decisions from North Carolina, North Dakota, Idaho, Indiana and Kentucky which are not listed herein, as they are based on facts materially different from those of the instant case. The decisions which recognize the right to proceed solely in tort are termed "a class of comparatively recent cases" in the annotation on page 1029 of 15 A. L. R. They are based on the theory that it is desirable from the standpoint of public policy that an "indemnity on specific contingencies shall be provided those who are eligible and desire it"; that an insurance company is affected by this public interest; that having solicited and obtained an application for insurance and accepted conditionally the initial premium, it then becomes the duty of the insurance company to act upon the application within a reasonable time; and that the company is liable for all damages suffered in consequence of a breach of this duty.

The long established conception of the legal relations between an applicant and an insurance company is that such relations are fundamentally the same as those between parties negotiating any other contract, and are "purely contractual." "The contract of insurance is to be tested by the principles applicable to the making of contracts in general." *Clark* v.

*Ins. Co.,* 89 Me. 26; 32 C. J. 1091 (Insurance); 37 C. J. 378 (Life Insurance); 14 R. C. L., p. 896, sec. 72; *Meadows* v. *Ins. Co.,* 104 W. Va. 580, 583-4. It is settled almost beyond cavil that mere delay, mere inaction, by an insurance company in passing on an application does not constitute an acceptance or establish the relationship of insurer and insured. Joyce, Insurance, sec. 57; 1 Couch Cyc. of Ins. Law, sec. 86; 1 Cooley's Briefs on Ins. (2nd Ed.), pp. 595-6. Yet the theory advanced by appellee, in making the insurer responsible in damages for the amount of the policy because of delay, would accomplish by indirection that which the law will not permit to be done directly.

No reason is apparent why an insurance contract should be regarded as of any more interest to the public than a contract of employment. It is of as much importance to the public that a person and his dependents have support during his lifetime (by wages or salary) as that his beneficiaries have a competency (through insurance) after his death. Yet it has never been held that delay in passing upon an application for employment affected the public interest to the extent that it made the employer liable for all damages arising from such delay. The theory advocated by appellee is such an innovation on established insurance law that this Court is not prepared now to accept it. We do not mean to imply, however, that action in such case might not lie on an implied contract.

We are confronted with another departure from the "beaten paths" which we cannot approve, i.e. that of the personal representative demanding as damages to the estate of the applicant, the sum which the application provided should be paid to certain individuals. The appellee would support this demand by *Duffy* v. *Banker's Ass'n, supra,* which upheld a similar action on the ground that "the negligence, if any, was that of failing to discharge a duty owing the deceased." *DeFord* v. *Ins. Co., supra,* permits this procedure for the same reason. If this duty were breached in the instant case, how has the personal estate of the deceased suffered? Not one penny of the proceeds of the policy was to go to the estate. On the other hand, the estate is entitled

to a return of the premium (which accompanied the application), and to that extent profits by the alleged negligence. The law is settled that where a third person is named as beneficiary in a life insurance policy, the proceeds belong exclusively to the beneficiary "and cannot properly be claimed or received by the * * * legal representative of the insured as assets of his estate." 37 C. J., p. 566, sec. 323; 14 R. C. L., p. 1425-6. We see no reason for excepting this case from the general rule, though brought in tort instead of *ex contractu.*

We, therefore, find that on the demurrer to the evidence, the law is with the defendant, and we reverse the judgment of the lower court and enter judgment here for the defendant.

*Reversed and rendered.*