## AMERICAN LIFE INS. CO. v. NABORS.*
### No. 12604.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 23, 1932.

Rehearing Denied March 19, 1932.

Garnett & Garnett, of Gainesville, and Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

Edwards & Robinson, of Oklahoma City, Okl., and Murphy & Murphy, of Gainesville, for appellee.

CONNER, C. J.

This suit was instituted in behalf of appellee Neoma Lee Nabors, a minor of twelve years, by her uncle and next friend, John A. Miller, against the American Life Insurance Company as defendant, to recover damages because of the negligence and failure of the company's soliciting agents to seasonably and within a reasonable time forward to the company applications for insurance, in the sum of $2,000, made by Allie Lee O. Parkey, the mother of appellee.

The evidence shows that F. L. Pope was the duly appointed and acting agent of the appellant company in Pampa, Gray county, Tex., and that Frank D. Thompson was such agent in Amarillo, Potter county, Tex.; that on or about June 20, 1929, Pope secured from Allie Lee O. Parkey an application for a "non-medical" policy of insurance on her life in said county for the sum of $2,000, she, at the time, paying Pope the first premium required, but her signature thereto was not affixed. Pope failed to forward this application or premium to the company, but later handed it to Agent Thompson, with the request that he secure Mrs. Parkey's signature to the application. Thompson failed to secure the signature of Mrs. Parkey to this application or to forward it to the company. On the contrary, he destroyed the application made to Pope and took another application from Mrs. Parkey on July 22, 1929. This second application was immediately forwarded by Thompson to the company and reached its office on July 23, 1929. The company required that all questions in applications must be propounded directly by the agent and answers thereto filed in the agent's own handwriting. It further required the report to give two references through whom it might secure reliable information as to the applicant. Neither of said applications were ever accepted or rejected by the company, and the last application was pending at the time of the death of Allie Lee O. Parkey, on August 14, 1929.

During the time the second application was in the hands of the company, some 23 days, Dr. Simpson, the medical director for the American Life Insurance Company, whose business it was to pass upon all applications, wrote to F. L. Pope, on August 1st, 6th, and 15th, inquiring for additional information. These letters were received by Pope, but never answered. During this time Dr. Simpson also sought information from a credit reporting agency relative to the references given by Mrs. Parkey in her application, but no reply was received until after Mrs. Parkey's death. In the receipt given Mrs. Parkey for the first

premium paid by her to Pope, it is expressly provided, among other things, that, if "the application is approved by the company for the form of policy applied for, and in that event, the insurance as applied for will be in force from the date of the application." The company knew the applicant was not living with her husband, and the agent in his report unqualifiedly recommended her as a first class risk. The applications and the evidence show that at the time of making them Mrs. Parkey was a young, strong woman in good health, and not affected with any of the diseases of which inquiry was made.

The case was tried by a jury on special issues submitted by the court. The court defined the terms "negligence," "proximate cause," "new and independent cause," and "contributory negligence," which had been pleaded by the defendant. The jury answered that Pope, or some of the defendant's agents, was guilty of negligence in failing to forward to the home office the application made by Mrs. Parkey on or about the 20th day of June, 1925, and that such negligence was the proximate cause of the injury and damage sustained by the plaintiff. The jury further found that the defendant company had a reasonable time in which to act upon such application prior to the death of Mrs. Parkey, that the company was negligent in failing to secure the signature of Mrs. Parkey to the first application, and that such negligence was the proximate cause of the injury sustained by the plaintiff, if any, and that Mrs. Parkey was not guilty of contributory negligence. The jury further found that at the request of defendant company Mrs. Parkey signed a second application, upon which the company had a reasonable time to act prior to the death of Mrs. Parkey, that the company, or its agents, was guilty of negligence in failing to act upon the second application prior to her death, and such negligence was the proximate cause of the injury and damage suffered by the plaintiff, in the sum of $1,250.

Upon the verdict so returned, judgment was rendered in favor of plaintiff for the sum of $1,250, with interest thereon from the date of the judgment at the rate of 6% per annum, together with costs, and from this judgment the insurance company has duly prosecuted this appeal.

The evidence shows that Mrs. Parkey was living apart from her husband in the city of Amarillo, and that the plaintiff in this cause was her sole surviving child. It further shows that the husband and father, who lived in Oklahoma, visited the city of Amarillo, met his wife, and shot and killed her and killed himself, upon the 14th day of August, 1929, and the pleadings, briefs of counsel, evidence, and findings of the jury show that the judgment in favor of appellee was based solely upon negligence and unreasonable delay in the forwarding and the acceptance of the applications for insurance made by the deceased mother, Mrs. Parkey. In other words, as appellant urges, and as appellee asserts in her brief, the present action in behalf of plaintiff is not based upon a contract, either express or implied, but solely upon the negligence of the insurance company in failing within a reasonable time to pass upon the application for life insurance by appellee's mother. And we wish to compliment the opposing counsel upon the painstaking and able presentation of their conflicting views.

As appellant points out, the precise question involved in this case has not been determined by the courts of Texas. The case of Connecticut Mutual Life Ins. Co. v. Rudolph, 45 Tex. 454, was one in which the applicant applied for and paid the first premium on an insurance policy of $5,000, with the agreement that the insurance should take place from the date of the application, provided the application should be accepted by the company. The application was forwarded and received in the principal office on November 22, 1870. On the 28th day of that month it was remailed with a memoranda stating that the name of the applicant, as written by himself, was spelled in two different ways, and requiring an explanation from the applicant himself. The applicant died November 23d, before the application was received on its return. On December 28th the secretary of the company informed the local agent that the policy, though prepared, was rejected. No repayment or tender to repay, by the agent, the amount of the premium paid, was shown, but the principal office instructed its local agent, on the 19th of January, 1871, to return the premium money. The suit was brought on an alleged "contract" of the defendant company to insure the life of White M. Richards for the benefit of the plaintiffs, his wife and child. It was held, in substance, that no contract for the insurance sought had been shown by agreement, estoppel, or otherwise.

This court decided, in the case of Merchants' & Bankers' Fire Underwriters v. Parker, 190 S. W. 525, that, quoting from the headnotes: "Where an application for fire insurance provided that no liability should attach until the application was actually approved by the home office, there can be no recovery where the jury found that the application had not been approved, since until the approval there was no contract, but only a proposal for a contract."

In Brownwood Benev. Ass'n v. Maness, 30 S.W.(2d) 1114, by the Eastland Court of Civil Appeals, it was held that no insurance contract was consummated where the application was signed by applicant on deathbed and certificate issued after his death, notwithstanding the agent's negligence in failing to indorse a previous application.

In National U. F. Ins. Co. v. Patrick, 198

S. W. 1050, by the Amarillo Court of Civil Appeals, it was held that a mere application for insurance is not a contract of insurance, but, when made out and forwarded to the insurer, is only a proposition on the part of the applicant which must be accepted by the proposed insurer before it can become a contract of insurance. To the same effect are the cases of Great Southern L. Ins. Co. v. Dolan, 262 S. W. 475, by Section A of our Commission of Appeals, and Northwestern M. Life Ins. Co. v. Neafus, 145 Ky. 563, 140 S. W. 1026, 36 L. R. A. (N. S.) 1211, by the Supreme Court of Kentucky, and the editor in a note to the last-cited case says: "The overwhelming weight of authority supports the rule enunciated in the above decision, that mere delay in passing upon an application for insurance cannot be construed into an acceptance thereof by the insurer"—citing many cases.

Appellee, however, cites a different line of cases. The first is that of Duffie v. Bankers' L. Ass'n, 160 Iowa, 19, 139 N. W. 1087, 1090, 46 L. R. A. (N. S.) 25, decided by the Supreme Court of Iowa in 1913. This case seems to be the first which directly involves the point now under consideration by this court. The case is referred to in behalf of appellant as the "Daddy of all authority supporting plaintiff's contention." In that case the court said: "Having solicited applications for insurance, and having so obtained them and received payment of the fees or premiums exacted, they are bound either to furnish the indemnity the state has authorized them to furnish or decline so to do within such reasonable time as will enable them to act intelligently and advisedly thereon or suffer the consequences flowing from their neglect so to do. Otherwise the applicant is unduly delayed in obtaining the insurance he desires, and for which the law has afforded the opportunity, and which the insurer impliedly has promised, if conditions are satisfactory. Moreover, policies or certificates of insurance ordinarily are dated as of the day the application is signed, and, aside from other considerations, the insurer should not be permitted to unduly prolong the period for which it is exacting the payment of premium without incurring risk."

In the case of Strand v. Bankers' Life Ins. Co., 115 Neb. 357, 213 N. W. 349, 350, by the Supreme Court of Nebraska, it is said: "The view that there is a remedy based on negligence seems to be founded on reason and justice. The receipt in the present case shows on its face that the insurance company, without assuming any insurance risk, accepted conditionally the first annual premium. The transaction makes the insurance company applicant's trustee for the return of the premium if the application is rejected and for the unconditional acceptance of the premium if the application is approved and the policy delivered. In connection with the application the receipt implies time for a proper investigation of the risk under consideration. Good faith and fairness of both parties are required in negotiations for insurance. The retaining of the money of the applicant beyond a reasonable time would deprive him of its possession and use during the delay. The use of money or interest thereon is a valuable right. Negligent or inexcusable delay on the part of a trustee is a wrong, if it deprives the beneficiary of the use of a trust fund which has served its purpose as such. The receipt, the application and the report of the examining physician imply a duty on the part of the insurance company to act on the proposed risk within a reasonable time under the circumstances surrounding the negotiations. In addition, an unreasonable delay and the retention of an unearned premium might deprive an insurable applicant of an opportunity to apply elsewhere for and to procure life insurance. Furthermore, an insurance company transacts business under a charter from the state. It is now recognized that insurance is affected with a public interest. It is regulated by the government for the protection of the insuring public. The privilege of an insurable person to apply to a licensed insurer for insurance is a vital feature of domestic life as well as of the industrial world. The possession of a premium held by an insurance company as a trust fund, without any obligation for insurance prior to the issuance and delivery of a policy, imposes the duty of acting on the application within a reasonable time. The conclusion therefore is that there is a remedy in the form of an action in tort for an unnecessary and negligent delay in performing such a duty, if it prevents an insurable applicant from procuring a policy which he would otherwise have received, thus causing a loss."

We also quote the following from the syllabi in the case of Security Ins. Co. v. Cameron, 85 Okl. 171, 205 P. 151, 27 A. L. R. 444: "Agents representing insurance companies, in soliciting insurance can bind the company with regard to matters within the limited and restricted scope of their authority; that is to say, matter pertaining to the taking and preparation of applications for insurance for submission to the company; and an insurance company is chargeable with the negligence of such agent in failing for an unreasonable length of time to forward an application of insurance for acceptance or rejection to the company. Insurance companies are held, in law, to a broader legal responsibility than are parties to purely private contracts or transactions. This is based upon the fact that those companies act under franchise from the state, and the policy of the state in granting such franchises proceeds upon the theory that it is in the interest of the public to the end that indemnity upon specific contingencies should be provided those who are eligible and

desire it, and for their protection the state regulates, inspects, and supervises their business. An insurance company, having solicited and obtained applications for insurance, and having received payment of the fees or premiums exacted, they are bound either to furnish the indemnity the state has authorized them to furnish or decline so to do within such reasonable time as will enable them to act intelligently and advisedly thereon or suffer the consequences flowing from their neglect so to do."

In concluding the opinion in the last-cited case, after a discussion of authorities, the court said: "We think that the following propositions are clearly deducible from the authorities that we have cited and quoted: That the applicant for an insurance policy has a right to rely upon the representations and conduct of solicitors of insurance for insurance companies in the taking of contracts and applications of insurance, and that the companies are bound by the acts of said agents within the scope of such agency, and that where the applicant fails to procure a contract of insurance and sustains a loss against which loss the insurance sought was to indemnify him, and where such failure and loss is due to the unreasonable delay and neglect of the soliciting agent, or other agent of such company, that such neglect and fault may be attributed to the company, and the insurance company becomes responsible to the applicant for whatever damage is the proximate and natural result of such neglect."

In a note to Boyer v. State Farmers' Mut. Hail Ins. Co., 40 L. R. A. (N. S.) 164, it is said: "* * * * it cannot be doubted that the proposition that an insurer should be held liable for a loss sustained by an applicant for insurance because of the negligence of the insured's agent in failing to forward the application within a reasonable time is sound."

In the case of Behnke v. Standard Acc. Ins. Co., 41 F.(2d) 696, 699, the United States Court of Civil Appeals says: "It is equally well settled that an insurance company may be liable for its delay in passing upon an application for insurance."

Besides the cases from which we have quoted, the following are cited in behalf of appellee, as in aid of the proposition maintained by the case of Duffie v. Bankers' Life Ass'n, supra, to wit: Johnson v. Farmers' Ins. Co., 184 Iowa, 630, 168 N. W. 264; Pfiester v. Missouri State Life Ins. Co., 85 Kan. 97, 116 P. 245; Wilken v. Capital F. Ins. Co., 99 Neb. 828, 157 N. W. 1021; De Ford v. N. Y. Life Ins. Co., 75 Colo. 146, 224 P. 1049; Dyer v. Missouri Life Ins. Co., 132 Wash. 378, 232 P. 346; Lechler v. Montana Life Ins. Co., 48 N. D. 644, 186 N. W. 271, 23 A. L. R. 1193; Brown v. Missouri State L. Ins. Co., 124 Okl. 155, 254 P. 7; Columbia Natl. Life Ins. Co. v. Lemmons, 96 Okl. 228, 222 P. 255; Dunne v. Western Natl. L. Ins. Co.,

35 Wyo. 59, 246 P. 246; Childers v. N. Y. Life Ins. Co., 117 Okl. 7, 245 P. 59; Merchants' & Bankers' F. Underwriters v. Parker (Tex. Civ. App.) 190 S. W. 525; Perez v. Fort Worth M. B. Ass'n (Tex. Civ. App.) 291 S. W. 574; 14 R. C. L. 896; 15 A. L. R. 1029, note; 32 C. J. 1106, and cases cited; article 5063, Rev. Civ. Statutes of 1925.

While the precise point now under consideration was not involved in the case of Thornton v. National Council Junior Order United American Mechanics, 110 W. Va. 412, 158 S. E. 507, 508, by the Supreme Court of West Virginia, we quote therefrom the following as presenting appellant's opposing views of the cases above cited in behalf of appellee from which we have quoted, to wit:

"The long-established conception of the legal relations between an applicant and an insurance company is that such relations are fundamentally the same as those between parties negotiating any other contract, and are 'purely contractual.' 'The contract of insurance is to be tested by the principles applicable to the making of contracts in general.' Clark v. Ins. Co., 89 Me. 26, 35 A. 1008, 1011, 35 L. R. A. 276; 32 C. J. 1091 (Insurance); 37 C. J. 378 (Life Insurance); 14 R. C. L., p. 896, § 72; Meadows v. Ins. Co., 104 W. Va. 580, 583, 584, 140 S. E. 552. It is settled almost beyond cavil that mere delay, mere inaction, by an insurance company in passing on an application, does not constitute an acceptance or establish the relationship of insurer and insured. Joyce, Insurance, § 57; 1 Couch Cyc. of Ins. Law, § 86; 1 Cooley's Briefs on Ins. (2d Ed.) pp. 595, 596. Yet the theory advanced by appellee, in making the insurer responsible in damages for the amount of the policy because of delay, would accomplish by indirection that which the law will not permit to be done directly."

"No reason is apparent why an insurance contract should be regarded as of any more interest to the public than a contract of employment. It is of as much importance to the public that a person and his dependents have support during his lifetime (by wages or salary) as that his beneficiaries have a competency (through insurance) after his death. Yet it has never been held that delay in passing upon an application for employment affected the public interest to the extent that it made the employer liable for all damages arising from such delay. The theory advocated by appellee is such an innovation on established insurance law that this court is not prepared now to accept it. We do not mean to imply, however, that action in such case might not lie on an implied contract."

■■ We have concluded that we should approve and apply the rule of action adopted in the case of Duffie v. Bankers' Life Ins.

Ass'n, supra, and those following it from which we have quoted. It is true, in a sense at least, that an incorporated life insurance company sustains a relation different to the general public than that of the ordinary employer or corporation. It is a matter of common knowledge that the insurance association appoints agents whose duty it is to solicit applications for insurance. The application and evidence shows that Mrs. Parkey was employed as a waitress in a café in Amarillo without the care and support of a husband, and, having a minor daughter, and we think it must be implied that Mrs. Parkey, in making the application to Pope, was conscious of the uncertainty of life, and was actuated by a desire to provide for the welfare of her little daughter, who was her sole dependent. The evidence also shows without dispute that it was the duty of the agent Pope from forms furnished him by the appellant company to propound the inquiries to which answers were desired, and that such answers should be made in his own handwriting. This was done in the case of Mrs. Parkey, and, upon the payment of the premium required of her, a contractual relation between her and the company arose. We think she then had the right to expect and demand that the agent should continue the further performance of his duty by transmitting her application for final approval of the insurance company, which, in turn, would have been in duty bound within a reasonable time to either approve or reject the application, to the end that Mrs. Parkey might exercise the privilege which life gave to her to effectuate her ultimate purpose by applying for insurance in some other company. It is undisputed, however, that Pope failed to sign or procure the signature of Mrs. Parkey to the application and return it to the company, as it was his duty to do. On the contrary, in so far as the evidence shows, he retained the premium paid by Mrs. Parkey, and handed the original application to the company's agent in Amarillo, a Mr. Thompson, who destroyed the original application and procured a second one on July 22, 1929. It thus appears that from June 20, 1929, to July 22 of the same year, over a month, no action on the part of the company's agent was taken, nor does it appear that during this period either the company or either of its agents communicated with Mrs. Parkey, giving notice of the delay or the cause of the delay. It appears that the second application, prepared on July 22d, was duly forwarded to the company, after which there was a continued delay on the part of the company's managing officer until after Mrs. Parkey's death. It is a well-recognized rule that a violation of duty, which proximately results in loss or injury to another, gives a right of action to such other for damages. We therefore conclude that the trial court did not err in refusing to sustain defendant's

general demurrer to appellee's petition, or in failing to give appellant's requested peremptory instruction for a finding in its favor.

A number of other assignments of error are presented which are urged as sufficient to at least require a reversal of the judgment and a remanding of the cause for another trial. In behalf of appellant, an attempt was made to show that the delay of the company in acting upon the second application arose, in part, because the name of one of the persons given by Mrs. Parkey as a reference was spelled in two different ways in the application, to wit, in one place it appears as "William Threadgill," in another as "Treadgill." But it appears that it was the duty of the agent himself to write the answers, and that mistake, if of any importance, was the mistake of the company's own agent. There was nothing in the evidence to show that Mrs. Parkey gave or wrote the name in the two different ways. Mr. Threadgill, called as a witness, testified that he lived at 2302 Front street, Amarillo, in 1929; that he "built the place and went there sometime in 1926"; that he owned property there and paid taxes there; that he was acquainted with Allie Lee O. Parkey during her residence in Amarillo; that she lived at the Crawford Hotel, and worked at the Miller Café, known as "Angels' Café," conducted by her brother. That his name was in the city directory for the year 1929 of the city of Amarillo, properly spelled, on page 563; that he knew of no one by the name of "Treadgill"; that no such name appeared in the directory.

A further effort seems to have been made on behalf of the company to obtain some information as to the character and habits of Mrs. Parkey through a credit reporting agency. This report, as already stated, was not received until after her death.

We need not elaborate, however, on these efforts on the part of the company, for the jury specifically found that the company was guilty of negligence and of an unreasonable delay, and further found specifically that Mrs. Parkey was not guilty of contributory negligence, as appellant pleaded, and these findings are not attacked by any assignment of error as unsupported by the evidence. We fail to find prejudicial error in the action of the court in admitting the hearsay statements attributed to the witness Montgomery, inasmuch as the facts embodied in the statements were otherwise shown by undisputed testimony. Nor do we think there was error in rejecting the offered report of the credit reporting agency, to which the managing officer of the company, a Dr. C. W. Simpson, had applied for a report as to the fitness, from a moral and financial standpoint, of Mrs. Parkey. The report contained some statements, such as that Mrs. Parkey

"drank some," that she was living with another woman in a small hotel in Amarillo, and "had been going out with other men here and her morals and habits were questionable," Dr. Simpson would have testified that, had he received this report in time, he would have rejected Mrs. Parkey's application. But this report was not received until after Mrs. Parkey's death, and there was no evidence whatever to show the character or responsibility of the persons who, in behalf of the credit agency, made the statements contained in the report; nor was there any attempt on the trial on behalf of appellant to prove by any person that Mrs. Parkey drank to any extent or that she went out with other men with whom she should not have gone; or was in any respect otherwise an unfavorable subject for insurance, and the bill of exception shows that the report was not "offered in evidence as proof of the facts therein" stated.

Nor do we find prejudicial error in any other respect as assigned, such as objections to the form of the special issues submitted, to the jury, the refusal of the court to give special issues requested, and hence we finally conclude that all assignments and propositions of error should be overruled and the judgment affirmed.

BUCK, J., not sitting.