ROBERT G. CRAFT

*v.*

INLAND MUTUAL INSURANCE COMPANY

(No. 11083)

Submitted September 20, 1960. Decided October 18, 1960.

*J. Campbell Palmer, III, Palmer & Elkins,* for plaintiff in error.

No appearance for defendant in error.

GIVEN, JUDGE:

Plaintiff, Robert Craft, obtained a verdict and judgment in the Circuit Court of Braxton County, against Inland Mutual Insurance Company, for $2,600.00, the cause of action being based on provisions of an insurance policy alleged to have been issued by defendant to plaintiff, insuring against damages resulting to an automobile owned by plaintff, the automobile having been practically destroyed in a collision subsequent to the alleged issuance of the policy.

Plaintiff purchased the automobile in November or early December, 1957, though he had not obtained record title thereto at the time of the collision, December 31, 1957. At the time of the collision the automobile was being driven by a person to whom plaintiff had loaned it, the plaintiff not being a passenger. After purchasing and obtaining possession of the automobile, plaintiff applied for and was issued a policy of insurance by the Crown Insurance Company, as a substandard risk, the substandard risk classification, apparently, being for the reason that plaintiff had been involved in certain prior automobile collisions, or because of cancellation of other automobile insurance policies theretofore issued to him. Shortly after purchasing the policy from Crown Insurance Company plaintiff inquired of Forrest Boggs, a licensed insurance Agent of Crown Insurance Company, though not specifically licensed as an agent of defendant, as to other insurance covering the automobile involved.

Though a contract of agency between Boggs and the defendant, dated June 7, 1945, is exhibited in evidence,

the defendant denies the existence of any agency, contending that the contract had been terminated. Whether terminated or not, Boggs did contact, by telephone, agents of defendant who were authorized to accept applications for policies and to issue policies in accordance with such applications. Apparently, in some cases, at least, such transactions could be, and were, transacted by telephone. The plaintiff and Boggs testified to the effect that the telephone conversation between Boggs and the authorized agent resulted in an understanding that the application of plaintiff was accepted and that the policy would be prepared and mailed to Boggs for delivery to plaintiff. No policy was ever prepared, and defendant vigorously contends that no such understanding was had on its part, that it merely quoted to Boggs the amount of the premium on such a policy as to a substandard risk, and advised Boggs that it could not transact any business through his agency for the reason that he was not licensed or authorized to represent defendant. No part of any premium for the policy was ever paid to any representative of defendant who was authorized to issue a policy, though apparently a portion of such a premium was held in trust by Boggs for application thereto. There is no contention that Boggs had authority to approve applications or to issue policies on behalf of defendant.

A preliminary question relates to the right of plaintiff to maintain this action in his own right. At the time of trial plaintiff was incarcerated in a county jail, on a charge of having violated parole, as to a penitentiary sentence. It is the contention of defendant that the action could be prosecuted only by a committee appointed for plaintiff, pursuant to provisions of Code, 28-5-33, as amended. We think the question is controlled by the principle adhered to in the case of *Nibert v. Carroll Trucking Company*, 139 W. Va. 583, 82 S. E. 2d 445. There it was held: "1. A convict under sentence of imprisonment in a penitentiary for one year, or more, while released from confine-

ment on parole, may, in a case in which he is the plaintiff, make a motion in his own name to set aside a nonsuit and reinstate the case.'' As in the cited case, the convicted person, the plaintiff in the instant case, was not, at the time material, incarcerated in a penitentiary.

The controlling question, we think, is whether the evidence adduced is sufficient to support the finding of the jury as to the existence of the alleged policy of insurance, whether, in fact, there was an offer and acceptance, or a meeting of minds of the parties in relation to the essential terms of the policy contract.

In *Meadows v. American Eagle Fire Insurance Co.*, 104 W. Va. 580, 140 S. E. 552, we held: ''2. In order to make a valid insurance contract, the minds of the insurer and the insured must meet on every essential element thereof.'' In the opinion, the Court said: ''A contract of insurance, like any other contract, must be based on a mutual agreement. 'The contract of insurance is to be tested by the principles applicable to the making of contracts in general. The terms of the contract must have been agreed upon. If the contract is incomplete in any material particular * * * it is of no binding force.' *Clark v. Ins. Co.*, 89 Me. 26. *McCully's Admr. v. Ins. Co.*, 18 W. Va. 782; *Hallauer v. Fire Assn.*, 83 W. Va. 401. 'If the parties have not agreed on * * * the amount to be paid in the event of a loss, * * * whatever may have been the negotiations or propositions passing between them, these have not reached the form and obligation of a subsisting contract.' 16 A. & E. Ency. Law 849. 'There must be a meeting of minds upon all the essentials of a valid contract of insurance. If any of the material details remain to be determined, the contract is not complete. Concurrence of minds is essential. The impressions of one alone of the parties is insufficient. In brief, nothing should be left open for future determination. The assent must be mutual, since this meeting of the minds is vital to the life of the contract.' Joyce on Insurance, sec. 45, p. 209. Cooley Briefs on the Law

on Insurance, 411. The fact that parties suppose they have agreed, when in reality they have not agreed as to an essential element of the contract, does not affect the above rule. The minds of the parties must wholly meet, not partially meet. The agreement must be integral not fractional. The unity of the concordance must be reached by the parties, not imposed by the court. A court is no oracle to divine assent where assent is wanting. *Ins. Co. v. Young's Admr.*, 23 Wal. 85 (107-8)."

In *Johnson v. Dixie Fire Insurance Company*, 108 W. Va. 512, 152 S. E. 11, we held: "1. An oral executory contract for fire insurance may be specifically enforced in a court of equity; but the evidence to establish that contract, that there was a meeting of the minds of the contracting parties to all the essentials, must preponderate in favor of the party seeking specific performance; and unless the evidence does so preponderate, relief will be denied." See *Thornton v. National Council Junior Order United American Mechanics*, 110 W. Va. 412, 158 S. E. 507; *Croft v. Hanover Fire Insurance Company*, 40 W. Va. 508, 21 S. E. 854; 12 Appleman, Insurance Law and Practice, Section 7122; 1 Couch, Cyclopedia of Insurance Law, Section 64.

Though plaintiff and Boggs testified to the effect that Boggs, in the telephone conversation, gave to the agent of defendant authorized to issue policies "Everything that was necessary", as a basis for the issuance of a policy, nowhere are the precise or essential terms and conditions of such a policy stated, or shown to have been agreed to by the parties. True, the make and name of the particular automobile were mentioned, and the premium of such a policy for a substandard risk appears to have been given to Boggs, or at least there was sufficient evidence of such facts to raise jury questions, but other essentials of such a policy agreement are not mentioned, or are referred to only in general terms so as to leave only uncertainty as to what they were. The statement of Boggs that

"Everything that was necessary" was furnished to the defendant, and similar statements of Boggs and the plaintiff are, at most, mere conclusions of the witnesses, and do not establish or even indicate other essential elements of the proposed contract, and do not establish a meeting of minds as to the essential requirements of such a contract. The information as to the make of the automobile owned by plaintiff, and the price quoted as to the substandard risk, could have been for purposes of consideration of the application for such insurance as well as for the fixing of essential terms of a policy. Admittedly, no policy was ever signed by an authorized agent and no part of any premium was ever received by any agent of defendant authorized to issue such a policy. In such circumstances, the plaintiff has, we believe, failed to establish that there was, in fact, any agreement as to at least many of the essential elements of the policy alleged to have been issued or that there was a meeting of the minds of the parties. There exists no substantial evidence on which the jury could have determined what terms and provisions of such a policy were intended, or agreed to. We can not "suppose" the parties "have agreed, when in reality they have not agreed as to the essential element of the contract".

The conclusions reached as to the insufficiency of the evidence to support a jury finding to the effect that a policy was issued makes it unnecessary to discuss other questions briefed. The judgment of the trial court must be reversed, the verdict of the jury set aside, and the case remanded.

Any action or judgment in the instant case, either in this or the trial court, shall not, however, prejudice any right of the plaintiff to proceed further in such manner as he may be advised. See *Johnson v. Dixie Fire Insurance Company, supra.*

*Judgment reversed;*
*verdict set aside;*
*case remanded.*