## GIDDINGS v. INSURANCE COMPANY.

The charter of A., a mutual life insurance company, provides that " every person who shall become a member of the corporation, by effecting insurance therein, shall, the first time he effects insurance and before he receives his policy, pay the rates that shall be fixed upon and determined by the trustees." In August, 1872, C., A.'s agent, received from B. an application for a policy upon his life for $6,000, duly made out upon a printed form furnished previously by C. A policy was issued by A.; August 24, and forwarded to C. It contains a proviso that it shall "not take effect and become binding on the company until the premium be actually paid, during the lifetime of the person whose life is assured, to the company or to some person authorized to receive it, who shall countersign the policy on receipt of the premium." The premium to be paid by B. amounted to $302.52. The policy not having been called for, C. returned it, October 2, to A., and it was thereupon cancelled. Nothing beyond the delivery of the application to C. was done by B., or by any one in his behalf. He died September 4. His administrator tendered the first premium to C., who declined to act in the matter. Thereupon he transmitted the proofs of B.'s death to A., and on the refusal of the latter to accept the premium and deliver the policy brought this suit against A. *Held*, that the suit cannot be maintained, the payment of the premium in the lifetime of B. being a condition precedent to A.'s liability.

APPEAL from the Circuit Court of the United States for the Northern District of Illinois.

This is a suit in equity by Loren Giddings and Leander Giddings, administrators of Silas Giddings, deceased, to compel the specific performance, by the Northwestern Mutual Life Insurance Company, of its alleged contract, made with him some months prior to his death, to insure his life in the sum of $6,000. The court below dismissed the bill, whereupon the complainants appealed here.

The remaining facts are stated in the opinion of the court.

*Mr. Henry G. Miller* and *Mr. Thomas G. Frost* for the appellants.

*Mr. Thomas Hoyne, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

The facts of this case necessary to be considered are few and simple. They are clearly disclosed in the record, and there is no conflict between the parties about them.

The appellee is a corporation created by the State of Wisconsin. Its principal office and place of business were at Milwaukee. It was authorized to insure lives. Dean & Payne were its agents at Chicago. The extent of their authority was to receive applications, forward them to the office at Milwaukee, and, when risks were taken, to receive, countersign, and deliver the policies, collecting in all cases, before the latter was done, the first premium from the assured.

On or about the 6th of August, 1872, a member of the firm of Roberts & Hubbard, of the county of Warren, in the State of Illinois, at the instance of Silas Giddings, Sen., of the same county, presented to Dean & Payne, at Chicago, an application, in due form, for a life insurance policy, insuring Giddings in the sum of $6,000. The application consisted of a printed form furnished previously by Dean & Payne. It contained blanks to be filled with answers of the applicant to the questions propounded, and was filled up accordingly. Dean & Payne immediately forwarded it to Milwaukee. On the 24th of the same month the company considered the application and decided to issue the policy. It was issued accordingly, and bears date on that day. The premium to be paid by the assured was $302.52. The policy was immediately sent to Dean & Payne. Not being called for, on the 2d of October

following they returned it to the company, and it was thereupon cancelled.

At the same time that the policy was applied for, an application was submitted for a loan by the company to Giddings of $6,000. In relation to this matter there is some conflict in the evidence, but as the view which we take of the case before us renders it unnecessary to consider that subject, we pass it by without further remark.

The seventh section of the act incorporating the appellee is as follows : —

"Every person who shall become a member of this corporation, by effecting insurance therein, shall, the first time he effects insurance and before he receives his policy, pay the rates that shall be fixed upon and determined by the trustees ; and no premium so paid shall ever be withdrawn from said company, except as hereinafter provided, but shall be liable to all the losses and expenses incurred by this company during the continuance of its charter."

The policy, as made out, was according to the form issued by the company in all cases. Among other things it provided, —

"7th, This policy shall not take effect and become binding on the company until the premium be actually paid, during the lifetime of the person whose life is assured, to the company or to some person authorized to receive it, who shall countersign the policy on receipt of the premium."

Giddings was taken ill of acute pleurisy on or about the 15th of August, 1872, and died of that disease on the 4th of September following. On the 12th or 13th of November following, the appellants, by their attorney, tendered to Dean, of the firm of Dean & Payne, the first premium and demanded the policy. The attorney had also present proof of the death of Giddings. Dean "refused to have anything to do with the matter, as he claimed that the company was not liable." The proof of the death was thereupon transmitted to the home office at Milwaukee.

Neither a tender of the premium nor a demand for the policy was made by any one until the time before mentioned, and no notice was given by Giddings or by any one in his

behalf during his life that he intended to consummate the transaction by paying the premium and receiving the policy. All action on his part terminated with the delivery of his application to Dean & Payne for transmission to the company. He did nothing afterwards. There his connection with the affair ended.

Upon this state of facts the appellants insist that the company is liable for the $6,000 specified in the undelivered policy.

A few remarks will be sufficient to dispose of the case.

The presentment of the application to the agents at Chicago, its transmission to Milwaukee, and its receipt by the company, in nowise committed or bound the latter to anything. It was competent for the company to pause as long as they might deem proper, and finally to accept or reject the application as they might choose to do. If they elected to contract, they had the right to prescribe the terms, and it was for the other party to assent to or reject them. His unbroken silence, as would have been such silence by the company after receiving the application, was necessarily negation. Neither party in such case would have been bound in anywise to the other, because there would have been wanting the mutual assent of the minds of the parties, which is vital in all cases to the creation of a contract obligation. What was done, without something further, could have no more weight or efficacy, in the view of the law, than an unexpressed thought, or any other unexecuted intention.

The company prepared the draft of a contract which they were willing to execute. Among its stipulations was one that the assurers should not be bound by the instrument until the premium was paid in the lifetime of the assured, and the policy was countersigned by the authorized agent of the company. This was a condition precedent to the liability of the appellee, and necessary to its safety. There was nothing in it unconscionable or oppressive, and the company had a clear legal right to make it.

Where a condition is subsequent and it is broken, relief may be given upon equitable terms; but where it is precedent, and neither fulfilled nor waived, no right or title vests, and equity

can do nothing for the party in default. *Davis* v. *Gray*, 16 Wall. 203.

Here there was clearly no performance by the applicant, and it is equally clear that hence there was no contract or obligation whatsoever on the part of the company.

It was the business of the applicant, if, after sending forward his application, he continued to desire a policy, to keep up the proper communication with Dean & Payne, and during his lifetime to avail himself of the offer which the company had made. The proposition of the company expired with his life. After his death, his legal representatives could not act vicariously for him. To allow them to enforce such a claim would be contrary to the plainest principles of both law and equity. If authorities in so plain a case are needed, it is sufficient to refer to *Insurance Company* v. *Young's Administrator* (23 Wall. 85), and *Piedmont, &c. Life Insurance Co.* v. *Ewing*, 92 U. S. 377.

What the consequence would have been if, after the applicant was stricken with his mortal disease, the premium had been paid and the policy delivered, the company being ignorant of his changed condition, is a point which we do not find it necessary to consider.

*Decree affirmed.*