Bissell, P. J.,
delivered the opinion of the court.
Newcomb, as the administrator of the decedent, Nail, brought this action against the Provident Trust Society to recover three thousand dollars on a policy alleged to have been issued by the company during Nail’s lifetime. The company was apparently a mutual one, and in its organization provided for the collection of fees and assessments, both prior to the issuance of the policy and during its life. Nail died before the policy was actually issued. This is an important consideration, and necessitates an examination of all the matters preceding the delivery of the policy. The application was originally taken by one Jackson, who lived at Durango, and solicited insurance for the defendant company through an arrangement with Aldrich, the company’s agent in Denver. Jackson was not the company’s representative, and only had power to solicit the insurance and remit the premiums to the state agent, through whom communication was had with the main office in New York. The application was signed in June, 1891, when Jackson received from Nail eight dollars and a half on account of his membership fee and the first quarterly premium charged for that amount of insurance on that class of risk. Some question possibly might be made concerning the receipt of the money but for the fact that the application itself provided that the company should not be liable for any injury or death happening prior to the receipt and acceptance of the application and membership fee by the secretary in New York, and that the society should not be responsible for assessments paid to anybody except certain specified officers, or to an agent delivering a receipt signed by the president of the company. It was *142 established that Jackson was unauthorized to act in the company’s behalf with respect to the receipt of assessments. Nail, the insured, was charged with the knowledge of this condition because it was contained in his application, and he must be assumed to know that he acquired no claim against the company by reason of the payment of the money to Jackson. He received no receipt signed by the president. It was in testimony that the application was forwarded to the agent in Denver with the amount of the quarterly fee. It is not clear that this money was forwarded by Jackson to Aldrich, the state agent in Denver, with the original application. He states it to be a fact, according to his best recollection, but there are circumstances which cast some doubt upon his memory. It is in evidence that some days after the application had been forwarded to Denver, the letter was returned to Jackson undelivered, who testified that, thereupon, he returned it with the money either to the Denver agent or to the home office in New York. His recollection is apparently at fault. It is tolerably evident from the testimony that the application went from Denver to New York, was acted upon by the officers there, and returned according to one of its conditions to the agent in Denver, to be countersigned and delivered to the insured upon the payment of the premium. It is certain that the policy took this course and that the money did not accompany the application to the home office. When the policy was signed by the officers, it was sent to the agent to be delivered upon the receipt of the premium. It was not countersigned until the 21st day of August, 1891, at which time the first premium was received by the agent. On that date the agent forwarded it to the solicitor, Jackson, to be delivered. At this time Nail was dead. He was killed on the 18th of August. On these facts the court instructed the jury to find for the defendant and entered judgment on the verdict, and therefrom the administrator appeals.
This statement very clearly demonstrates the correctness of the judgment. The existence of a contract, entered into *143 between the parties and binding upon the insurer, must evidently be established to entitle the administrator to recover upon his policy. It was entirely competent for the company to stipulate that they should not be bound except upon compliance by the insured with whatever conditions precedent they might see fit to attach to their contract. The company could stipulate that they should not be bound by the policy prior to the time that the applicant for insurance should pay his membership fee, and the first assessment or premium which they might charge for that class of insurance. The policy contained this condition, and the evidence demonstrates that the applicant had not complied with that condition at the time of his death. The stipulation that the policy should be countersigned by the agent of the company prior to the time of its becoming a valid and binding obligation, was one which the company clearly had the legal right to make, and is in no sense oppressive or unconscionable, and the completion of the contract with the signature of the agent during the lifetime of the insured was essential to the existence of an obligation which could be enforced against the company. Giddings v. Insurance Co., 102 U. S. 108.
The insured stated in his application that the company should in no wise be responsible for accidents or injuries which might accrue prior to the receipt of the premium by the company in New York, unless possibly tbe company would be responsible in case the assessment was paid to one issuing a receipt signed by its president. There is no question concerning the extent and the character of the exception, nor are we called upon to interpret it or determine its scope, since Nail was given no receipt thus signed. He was then by the terms of his application entitled to no insurance from the company until after the payment of the premium. It is very plain that neither the company nor its agents received the premium or membership fee before Nail was killed. Under these circumstances, it cannot be said that a valid contract had been entered into between the parties which obligated the company to respond in this suit after Nail’s *144 death. No importance whatever can be attached to the fact of the delivery of the policy to the administrator subsequent to Nail’s decease. It was done wholly without the knowledge of. the company or its authorized agent, and seems to have been an attempt on the part of the local solicitor at Durango to make the company responsible for the misadventure which had attended the remittance of the money at the time of the original application. The agent in Denver, however, at the time he countersigned the policy, had no knowledge of Nail’s death, nor had he received any at the time he sent the policy to Jackson for delivery. Under these circumstances the delivery of the policy to the administrator could not be operative to bind the company and make that a valid obligation, which at the time the policy was countersigned and the money received was invalid by the very terms of the application which Nail himself had made in his lifetime.
Some other errors are suggested by the appellant, but it is needless to consider them, since on the whole case it is clear that the appellant was not entitled to recover in the suit.
The judgment of the court below was right, and it will accordingly be affirmed.

Affirmed.