### MUNGER et al. v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

No. 8530.

District Court, W. D. Missouri, W. D.

March 31, 1933.

William S. Hogsett, of Kansas City, Mo. (Hogsett, Smith, Murray & Trippe, of Kansas City, Mo., on the brief), for plaintiffs.

William C. Michaels, of Kansas City, Mo. (Alexander & Green, of New York City, and Meservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., on the brief), for defendant.

OTIS, District Judge.

Memorandum and Order on Defendant's Demurrer to the Petition.

Defendant has demurred to the petition in this case on the ground, among others, that it does not state facts sufficient to constitute a cause of action in plaintiffs against defendant.

The plaintiffs are the executors of the estate of George H. Bunting, deceased. The petition alleges that in February, 1932, Bunting applied to the defendant, through one of its agents, for a contract of insurance upon his life in the amount of $25,000, that at the time of his application he made an advance payment of the required premium (first by a note and thereafter by a check taking up the note, which check was cashed by the defendant), that he underwent a medical examination, that he passed that medical examination satisfactorily, that he was an insurable risk, that while his application was pending and had not been acted on he was advised by the soliciting agent who had taken his application that there was some difficulty at the home office which was delaying action, but that he hoped to be able later to hand to Bunting the contract he had applied for. The defendant, so far as Bunting was aware or had been advised, had neither accepted nor rejected his applica-

tion when on April 7, 1932, he was fatally injured in an automobile accident from which he died on the same day. After his death notice thereof was given to the defendant by Bunting's son, who was then notified by the defendant that the application had been declined March 1, 1932. It is alleged in the petition that the defendant owed a duty to Bunting either to accept or reject his application without unnecessary delay and within a reasonable time; that the defendant negligently violated this duty, and thereupon became liable in damages to Bunting, and upon his death to plaintiffs.

It is alleged also in the petition that the defendant fraudulently cashed the premium check given it by Bunting, fraudulently kept and retained the premium represented by the check, fraudulently deprived him of the use and benefit thereof, fraudulently masked from him the rejection of his application, and fraudulently led him to believe that his application had been accepted and was in force. The word "fraudulently," several times repeated as here indicated, was added to the petition by amendment before the argument on the demurrer.

Whether the petition states facts sufficient to constitute a cause of action in plaintiffs is the subject of this opinion.

█ 1. There is no contention by plaintiffs that the defendant is under any contractual liability arising from its failure either to accept or reject the application within a reasonable time. That is not the theory of the petition. The theory is that an unreasonable delay is a breach of duty owing an applicant for insurance which subjects the company to liability in tort. The theory is supported by a number of opinions in decided cases, none of which, however, is controlling here. The cases cited are Duffie v. Bankers' Life Ass'n, 160 Iowa, 19, 139 N. W. 1087, 1090, 46 L. R. A. (N. S.) 25; Behnke v. Standard Accident Ins. Co. (7 C. C. A.) 41 F.(2d) 696; Strand v. Bankers' Life Ins. Co., 115 Neb. 357, 213 N. W. 349, 350; Kukuska v. Insurance Co., 204 Wis. 166, 235 N. W. 403, 405; American Life Ins. Co. v. Nabors (Tex. Civ. App.) 48 S. W.(2d) 459; Columbian National Life Ins. Co. v. Lemmons, 96 Okl. 228, 222 P. 255; De Ford v. New York Life Ins. Co., 75 Colo. 146, 224 P. 1049; Dyer v. Missouri State Life Ins. Co., 132 Wash. 378, 232 P. 346; Fox v. Life Ins. Co., 185 N. C. 121, 116 S. E. 226; Carter v. Life Ins. Co., 11 Hawaii, 69.

I have read and studied each of the cases plaintiffs have cited, and others. Most of them, so far as they deal with the present question, were written with scissors and paste. They but say, "We have said so before," or, "So elsewhere has the ruling been." Such cases are of little value. The Supreme Court of the United States has not spoken on this subject save in dictum. The Court of Appeals for the Eighth Circuit has not spoken. For us the question is a new one—there is no precedent to follow—and, being new, must be decided in the light of principle and reason, not on a show of hands.

The theory of tort liability in a case like this is relatively novel in the law. Insurance contracts have been written for centuries, but only lately was it conceived that they are so different from other contracts as that one could acquire rights against an insurance company merely because the company delayed in accepting an offer to enter into a contract. There is natural curiosity to know what are the grounds on which this heterodoxy rests.

Nothing is more elementary than that there cannot be a tort liability unless there has been a legal duty which has been breached to one's injury.

Only four of the cases relied on by plaintiffs undertake to demonstrate the essential pre-existing legal duty. And what, according to them, is the duty basis for the asserted liability in tort? The answer is best and most fairly put in brief but exact quotations.

The Court of Hawaii (it leads the procession) said (Carter v. Life Ins. Co., supra): "Having received the application, having accepted the trust, he [the insurance agent] was, under the circumstances, bound either to forward it or to return it within a reasonable time. * * * Those engaged in the insurance business * * * should not mislead an applicant into believing that they would at least act upon his application and so cause him to delay applying to some other company. To hold the company liable in this case is in effect to hold, as equity holds, that that which ought to have been done was done."

Said the Supreme Court of Iowa (Duffie v. Bankers' Life Ass'n, supra): "This view [that there can be no negligence for a contract of insurance by reason of delay] overlooks the fact that the defendant holds and is acting under a franchise from the state. The legislative policy, in granting this, proceeds on the theory that chartering such association is in the interest of the public to

the end that indemnity on specific contingencies shall be provided those who are eligible and desire it and for their protection the state regulates, inspects, and supervises their business. Having solicited applications for insurance, and having so obtained them and received payment of the fees or premiums exacted, they are bound either to furnish the indemnity the state has authorized them to furnish or decline so to do within such reasonable time as will enable them to act intelligently and advisedly thereon or suffer the consequences flowing from their neglect so to do. Otherwise the applicant is unduly delayed in obtaining the insurance he desires, and for which the law has afforded the opportunity, and which the insurer impliedly has promised, if conditions are satisfactory. Moreover, policies or certificates of insurance ordinarily are dated as of the day the application is signed, and, aside from other considerations, the insurer should not be permitted to unduly prolong the period for which it is exacting the payment of premium without incurring risk."

Said the Supreme Court of Wisconsin (Kukuska v. Home Mutual Hail-Tornado Ins. Company, supra):

"In cases like this, the duty springs from the consensual acts of the parties and the surrounding circumstances rather than any specific provision of law applicable to the holder of the franchise as such.

" * * * By the soliciting, making and receiving of the application, the parties had entered into some kind of a consensual relationship. By the terms of the application it was not to ripen into a contract until the application was approved. But for this language in the application, it might be held that the failure to act within a reasonable time resulted in approval. * * *

"Under such circumstances, having in view the nature of the risk against which the insurer seeks protection, is there not a duty upon the insurer to act upon the application within a reasonable time? Can the insurer, having pre-empted the field, retain control of the situation and the applicant's funds indefinitely? Does not the very nature of the transaction impose upon the insurer a duty to act? It is considered that there is a duty. * * *"

Said the Supreme Court of Nebraska (Strand v. Bankers' Life Ins. Co., supra): "The view that there is a remedy based on negligence seems to be founded on reason and justice. The receipt in the present case shows on its face that the insurance com-

pany, without assuming any insurance risk, accepted conditionally the first annual premium. The transaction makes the insurance company applicant's trustee for the return of the premium if the application is rejected and for the unconditional acceptance of the premium if the application is approved and the policy delivered. In connection with the application the receipt implies time for a proper investigation of the risk under consideration. Good faith and fairness of both parties are required in negotiations for insurance. The retaining of the money of the applicant beyond a reasonable time would deprive him of its possession and use during the delay. The use of money or interest thereon is a valuable right. Negligent or inexcusable delay on the part of a trustee is a wrong, if it deprives the beneficiary of the use of a trust fund which has served its purpose as such. * * * In addition, an unreasonable delay and the retention of an unearned premium might deprive an insurable applicant of an oportunity to apply elsewhere for and to procure life insurance. Furthermore, an insurance company transacts business under a charter from the state. It is now recognized that insurance is affected with a public interest. It is regulated by the government for the protection of the insuring public. The privilege of an insurable person to apply to a licensed insurer for insurance is a vital feature of domestic life as well as of the industrial world. The possession of a premium held by an insurance company as a trust fund, without any obligation for insurance prior to the issuance and delivery of a policy, imposes the duty of acting on the application within a reasonable time. The conclusion therefore is that there is a remedy in the form of an action in tort for an unnecessary and negligent delay in performing such a duty, if it prevents an insurable applicant from procuring a policy which he would otherwise have received, thus causing a loss."

In these excerpts is to be found all that has been said touching any basis for the duty element in the tort theory. Building a composite structure from these excerpts we have: The duty of an insurance company within a reasonable time to act upon an application for insurance, the breach of which if damaging to an applicant gives him the right to sue in tort, arises:

(1) From the equitable principle that that which ought to have been done will be considered as having been done;

(2) from the fact that the insurance com-

pany has a franchise from the state which was granted in the public interest;

(3) from the fact that insurance companies impliedly agree to act honestly and fairly on applications submitted to them;

(4) from the fact that the insurance business is charged with a public interest;

(5) from the fact, where there has been an advance payment of premium, that unreasonable delay in acting is a breach of the trust in which the premium is held;

(6) from the fact that "some kind of a consensual relationship" has been entered into by the applicant and the company;

(7) from the value of the risk sought to be insured against;

(8) from the fact that the insurance company, having pre-empted the field, should not retain control of the situation and the applicant's funds indefinitely.

At first thought at least one is almost led to say that these are bricks made without straw, and also without clay, which, moreover, never have been baked. One is inclined to think that the cases cited by plaintiffs which were not reasoned (but went on precedent), after all were the best reasoned. Most of the formulations indeed entering into the composite seem so meaningless that it is difficult to discuss them as separate propositions. Learned counsel for plaintiffs in his brief, modestly purporting only to epitomize what the courts have said, but greatly improving on their attempts to justify what has seemed to them a right result, much more clearly and simply ascribes the duty claimed to the fundamental obligation of men in their dealings with others to use good faith and fairness, and still more particularly to what he calls a common-law duty on the part of an insurance company, arising from the public interest with which the insurance business is affected, to act on applications within a reasonable time.

Difficult as it is to discuss some of the arguments advanced by courts to demonstrate the existence of that duty which must support liability in tort, nevertheless I attempt it.

The declaration of the Hawaiian court, that the basis of the asserted duty is the equitable principle that that which ought to have been done will be considered as having been done, misses the mark entirely. Firstly, it assumes that something ought to have been done (presumably that the application should have been acted on in a reasonable time), but that is an assumption of the very thing to be proved. Secondly, it

supports, if it supports anything, a cause of action in equity, not one at law as for damages for tort. Thirdly, if it lends any support whatever to a law action, it is for an action in contract or quasi contract, and not one in tort.

The declaration of the Supreme Court of Iowa that the basis of the asserted duty is the fact that insurance companies have franchises from the state, if it proves anything, proves too much. Every corporation has a franchise from the state, but it never has been thought that that fact changes as to corporations the elementary rules of the law of contracts and requires that corporations shall accept or reject offers to enter into contracts within a reasonable time, whereas individuals are not similarly restricted. The franchise but gives to a corporation the right to transact business as an individual might, and subject to the same rules which govern individuals.

The declaration of the Supreme Court of Nebraska that the basis of the asserted duty, when an advance premium has been paid, is the obligation incumbent on a trustee faithfully to discharge his trust, assumes a trust agreement including an agreement, expressed or implied, that what has been paid will not be held indefinitely if the application is not accepted. If this be granted, the full duty of the trustee is to return the premium advanced. The further assumption that the trustee has agreed to act one way or the other on the application and has therefrom a contractual duty to act begs the whole question as to whether there is such a duty. Moreover, the enforcement of a trust, and the awarding of damages incidental to its violation, is for equity, not for a court of law.

Most unconvincing are these contentions. The others may be grouped, and stated as plaintiffs' counsel has stated them: That the claimed duty arises from the obligation of good faith and fairness and from the public interest affecting the insurance business.

Except where the obligation of good faith and fairness has been crystalized in statute or rule of the common law, it is not enforceable in courts. It is a moral obligation only. Many legal duties it is true had their origin in moral obligations; long ago certain moral obligations became legal duties by the alchemy of judges. But that was a necessity of eras more primitive than ours when legislation was rare and difficult. Now, when the mills, called Parliaments and Congresses and Legislatures, grind out new laws unceasingly to meet the real or imagined demands

of changed and changing times, courts may well restrain themselves to the discharge of their true function, the interpretation of the law that is, not the making of the law that should be. As for myself, proceeding super antiquas vias, I shall not say that because there ought to be a law requiring an insurance company at its peril to act within a reasonable time on an application for insurance, therefore that is the law.

The insurance business is affected with a public interest. Courts of highest authority have so held. German Alliance Insurance Co. v. Lewis, 233 U. S. 389, 34 S. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189. They have so held only in cases in which the validity of regulatory statutes was involved, and where the question was whether those statutes violated the provisions of the Fourteenth Amendment. The courts have held as to insurance companies that their right to freely contract is subject to the reasonable exercise of the police power of the states. State regulation of insurance companies has its basis in the police power and by no means in the public interest with which the insurance business is affected. The fact of public interest is not the source of that power, it but affects the locus of the boundary line limiting its exercise. And the police power is exclusively to be exercised by the Legislature, never by the judicial branch of government. The courts cannot impose a duty on insurance companies by virtue of a power which the courts do not possess and cannot exercise.

If the weight of judicial opinion on this question is to be determined by the number (not by the substance) of decisions for the tort theory as compared with the number which are against it, then it must be said that the weight of such opinion is with the plaintiffs. The decisions of most respectable courts, however, support the views I have expressed. I quote from two only out of several.

The Supreme Court of Appeals of West Virginia, in Thornton v. National Council, etc., 110 W. Va. 412, 158 S. E. 507, 508, has said:

"The long-established conception of the legal relations between an applicant and an insurance company is that such relations are fundamentally the same as those between parties negotiating any other contract, and are 'purely contractual.' 'The contract of insurance is to be tested by the principles applicable to the making of contracts in general.' * * * It is settled almost beyond

cavil that mere delay, mere inaction, by an insurance company in passing on an application, does not constitute an acceptance· or establish the relationship of insurer and insured. * * * Yet the theory advanced by appellee, in making the insurer responsible in damages for the amount of the policy because of delay, would accomplish by indirection that which the law will not permit to be done directly.

"No reason is apparent why an insurance contract should be regarded as of any more interest to the public than a contract of employment. It is of as much importance to the public that a person and his dependents have support during his lifetime (by wages or salary) as that his beneficiaries have a competency (through insurance) after his death. Yet it has never been held that delay in passing upon an application for employment affected the public interest to the extent that it made the employer liable for all damages arising from such delay. The theory advocated by appellee is such an innovation on established insurance law that this court is not prepared now to accept it. We do not mean to imply, however, that action in such case might not lie on an implied contract."

The Supreme Court of Mississippi, in Savage v. Insurance Co., 154 Miss. 89, 121 So. 487, 489, has said: "We are unable to perceive how an action may be maintained in tort which so clearly cannot be maintained on any theory in the contract. The Prudential Life Insurance Company was under no duty to write insurance on the life of appellant's intestate, because there is no statute in this state fixing such duty upon insurance companies. We can find no such rule at the common law. It is quite elementary that there cannot be a tort without a breach of a legal duty. It is true that the business of insurance is affected with a public interest, and it may be that under the State and Federal Constitutions the Legislature might impose upon insurance companies a duty in this behalf. But, unless and until the Legislature shall declare a legal duty on the insurance companies to an applicant for insurance, despite the terms of the application, this court is without the power or the desire to trench upon legislative authority. The courts of the land shall retain the respect of good citizens so long as they function within the sphere assigned to them by the Constitution and laws of the land."

These views are supported strongly by the dictum of the Supreme Court of the United States (and even the dictum of that

court usually is received by courts and lawyers with profound respect) in Giddings v. Insurance Company, 102 U. S. 108, 111, 26 L. Ed. 92. Said that court (it was not a tort case and therefore it was dictum so far as the tort theory is concerned): "The presentment of the application to the agents * · * and its receipt by the [insurance] company, in nowise committed or bound the latter to anything. It was competent for the company to pause as long as they might deem proper, and finally to accept or reject the application as they might choose to do. If they elected to contract, they had the right to prescribe the terms, and it was for the other party to assent to or reject them. His unbroken silence, as would have been such silence by the company after receiving the application, was necessarily negation. Neither party in such case would have been bound in any wise to the other, because there would have been wanting the mutual assent of the minds of the parties, which is vital in all cases to the creation of a contract obligation."

There is support also for these views in what was said by Judge (later Mr. Justice) Brewer in Misselhorn v. Mutual Reserve Fund Life Association (C. C.) 30 F. 545, 546 (also dictum so far as the tort theory is concerned):

"The plaintiff * * * insists that there was delay—culpable delay—on the part of the insurance company in acting upon the application. * · * Concede that there was unreasonable delay, and yet I do not see how any delay makes a contract in the face of the stipulation. If the applicant was dissatisfied, and the delay unreasonable, he could have recovered the money which he had paid.

"While receipt of the application may cast a moral duty upon the company to act promptly, yet delay does not operate in the same way as an acceptance of the application. * * * No negligence, no delay, reasonable or unreasonable, on the part of the insurance company could make a contract in face of the stipulation."

Also I think there is a source of light for the question here in what was said by Judge Walter H. Sanborn, speaking for the Court of Appeals for the Eighth Circuit, in Travis v. Nederland Life Ins. Co., 104 F. 486, 488. What he said there is an exposition of the true nature of an application for life insurance. It excludes any conception that such an application imposes other duties upon an insurance company than those which arise in connection with any offer to enter into a contract. Judge Sanborn said: "An application for life insurance * * * is only a proposal to contract on certain terms which the company to which it is presented is at perfect liberty to accept or to reject. It does not in any way bind the company to accept the risk proposed, to make the contract requested, or to issue a policy. Nor does it in any way bind the applicant to take the policy, to make the contract he proposed, or to pay the premium until his proposal has been accepted by the company and its policy has been issued. Until the meeting of the minds of the parties upon the terms of the same agreement is effected by an acceptance of the proposition contained in the application or of some other proposition, each party is entirely free from contractual obligations. The applicant may withdraw his application and refuse to take insurance on any terms. He may modify his proposal, may affix additional conditions or terms to it, or may make an entirely new proposition, while the company may refuse to entertain any proposition, or may reject that presented and submit a substitute. Nor is the freedom of the parties to retire from the negotiations or to modify their proposals, at any time before some proposition has been agreed upon by both, ever lost or affected by the fact that the applicant accompanies his proposal or application with a promise to pay the premium ·in the form of promissory notes, or even by an actual payment thereof. Until his application is accepted, such a promise or payment is conditional upon the acceptance, and his application is still no more than a proposition to take and to pay for the insurance if the company accepts his terms. The payment of the premium when the application is signed does not bind the company to accept his terms, nor does it estop the applicant from recovering the money he pays if the company rejects his proposal. These are fundamental rules of the law of contracts, which are constantly applied in this and other courts. * * *"

These cases, as I have said, did not deal with the precise question here. The eminent judges who wrote the opinions I have quoted from never had heard of the theory that an insurance company is liable in tort for a failure to act promptly on an application for insurance. In their eyes an application for insurance was just like any other offer to enter into a contract. They renounced the contention (and as to that what was said was

not dictum) that there could arise by implication an agreement to insure from mere delay in acting on an application for insurance. They said that delay was negation, that is, a refusal to accept, and that was not dictum. How is it possible that a refusal to accept an application, which cannot be tortured into an acceptance of it by implication, can constitute a basis for liability in tort? A refusal to act is not inaction, a fortiori it is not a wrongful delay in acting.[1]

2. The elements of (1) a duty and (2) its violation are not the only essentials of liability in tort. The violation of duty must have proximately caused injury to him to whom the duty was owing. In this case I cannot find this third essential element. For an easier analysis let us take a suppositious case.

A applies to X insurance company for life insurance in the amount of $10,000. With his application he pays in advance the first annual premium. The date of his application is January 1. After three months the company has not acted; has neither accepted nor rejected A's application. That, let us assume, is an unreasonable delay. If thereby a tort has been committed by the company against the applicant, that tort came into being at the moment when the company's delay became unreasonable. If so, then A can institute a suit for damages against the company. He is still in good health. He can still obtain insurance from some other company. Nevertheless, he sues for damages. But how has he been injured? And what is the measure of his damages?

It cannot be argued that A has been injured by the loss of the money he has advanced, for he has not lost it. At any time he can have it on demand, even if it is not voluntarily returned. It cannot be argued that he has been deprived of the use of that money. Voluntarily he parted with it. When he will he again can have it and the use of it. It cannot be argued that the inaction of the company has deprived him of the privilege of obtaining insurance from some other company for his application to one company does not prevent a contemporaneous or later application to some other.

It cannot be argued that he has been injured by the loss of the cash surrender value of a contract which might have been issued to him had his application been accepted, first, because that assumes that the contract immediately would have had a cash surrender value (which it would not have had), and, second, because that assumes not only that the company was under a duty to act, but that it was under a duty to enter into a contract.

Now suppose that A does not sue at once. Finally, after two months of delay, his application is rejected and his premium has been returned. His right of action to sue in tort is not terminated but, of course, continues until the statute of limitations shuts off his right to sue. In a year he does sue. Is it possible that the measure of damages in the case will be different in a year than it was in the beginning? Within that year, let us say, A's health so changes (he becomes afflicted with an incurable disease) that he can no longer obtain insurance from any company, and can prove that. Can he then maintain a suit in tort for damages against the company and have awarded damages which are proximately caused in no sense by the inaction of the company, but by a subsequently acquired malady?

If we suppose now that there has been unreasonable delay in acting on A's application, and that therefore a cause of action to sue in tort has accrued to A and that the company never has acted on the application, and that the delay in action continues for several months, and, while it still continues, A suddenly is killed. Certainly then his ability to procure insurance has been terminated, but is that inability to procure insurance proximately caused by the inaction of the company so that that could be considered in determining the measure of A's damages by such inaction? I think A's inability then to procure insurance is proximately caused by his death, and not by the inaction of the company on his application for insurance. The damages, if any, which he had before he met with accident certainly cannot all at once be multiplied a hundred fold by an event for which the company is not responsible and having no causal connection with its inaction on his application for insurance.

It is impossible for me to conceive of any argument which will justify the conclusion that in a tort action for unreasonable delay in acting on an application for life insurance, the pecuniary damages suffered by the applicant (not by some one other than

---

[1] With respect to the addition to the petition by amendment of the word "fraudulently," repeated in several different connections, it is my view that added nothing to plaintiffs' facts. If there is not a cause of action without that word (and I have stated my reasons for believing there is not), then the characterization of the several acts and inactions of the defendant as fraudulent gives them no further significance or greater value.

the applicant whose interest arises only when the applicant is dead) can be anything, much less the full amount of the insurance which was applied for and which, if a policy had been issued, would not have been payable until after the death of the insured.

■ 3. There is another heterodoxy in plaintiffs' petition in this case: Plaintiffs are the executors of the estate of Bunting. If there was a tort, it was against Bunting. And it is ancient doctrine that a right to sue in tort does not survive the death of him who has been injured. Only a statute can modify that rule. The plaintiffs rely on Missouri statutes (sections 98, 99, R. S. Mo. 1929 [Mo. St. Ann. §§ 98, 99]) which are:

"Sec. 98.—For all wrongs done to property rights, or interest of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or, after his death, by his executor or administrator, against such wrongdoer * * * in the same manner and with like effect, in all respects, as actions founded upon contract.

"Sec. 99.—The preceding section shall not extend to actions for slander, libel, assault and battery or false imprisonment, nor to actions on the case for injuries to the person of the plaintiff, or to the person of the testator or intestate of any executor or administrator."

■■ Section 98 is the first to be considered. It is in derogation of common law, and, as such, must be construed strictly. It provides for the survival of certain, not all, actions in tort. Those which are for "wrongs done to property rights, or interest" survive. And the phrase "wrongs done to property rights, or interest" is the equivalent of "wrongs to property rights or property interest." Bates v. Sylvester, 205 Mo. 493, 104 S. W. 73, 11 L. R. A. (N. S.) 1157, 120 Am. St. Rep. 761, 12 Ann. Cas. 457.

Whether this statute avails the plaintiffs depends on whether the tort here complained of was one which damaged Bunting in some property right or interest, that is, in some right or interest he had in property. And the question is, In what property did he have a right or interest which was affected in any wise by the defendant's delay in action on his application for insurance?

Certainly this property we are searching for must have been in esse at the time Bunting's right or interest in it was injuriously affected, and therefore at the moment when the defendant's delay became unreasonable.

There was then no contract between Bunting and the defendant, and hence then he had no right of property in any existing contract with defendant. He had an interest and right in the money he had paid by way of an advance of premium, but that right and interest was not affected by the delay of the defendant. At no time and for no time was that advancement withheld from Bunting, except with his full consent.

Counsel for plaintiffs in his brief says: "But the facts remains that Bunting in his lifetime (was) exactly $25,000 poorer than (he) would have been if defendant had not been guilty of the wrongs complained of." I am not able to grasp the justification for this assertion. It seems to me that Bunting was not poorer by a penny by reason of the defendant's delay. If one applies for a contract of insurance and gets that contract, he has something that is or may be of value, but if he does not get it I do not perceive that he has lost something that is property. If delay of action on his application has lost him anything, it has lost him (and that is really what it is contended Bunting lost) an opportunity possibly to get a contract with some other company, but such a speculative thing as that certainly is not property.

In this connection plaintiffs base an argument on section 99 of the statutes set out supra. That section says that section 98 shall not extend to actions for slander, libel, assault and battery, false imprisonment, etc. The argument is that here is a legislative construction of section 98 to the effect that except for section 99 such tort actions as slander, libel, assault and battery, false imprisonment, etc. (hence, by analogy, such a tort action as that claimed here), would survive under section 98.

There is a surface plausibility in this argument. And it has support in the dictum of the Kansas City Court of Appeals in State ex rel. v. Indemnity Co. (Mo. App.) 29 S.W.(2d) 743, 745, that "were it not for section 98 [section 99, R. S. Mo. 1929] all causes enumerated would survive under section 97 [section 98, R. S. Mo. 1929]." But I cannot accept the view that an action for assault and battery, for example, is for a wrong "done to property rights or (property) interest" of the person who is the victim of an assault and battery. Such a construction of section 98 is not only not a strict construction, it is an impossible construction, if words are to be taken in their ordinary meaning.

922

There is no ambiguity in section 98 necessitating interpretation. To say that it was intended in this section to provide for the survival of all tort actions whatsoever is to entirely strike out from the section or to rob of all meaning the reference in it to property rights and property interest. It would be to eliminate what obviously is of the very essence of the section. Such a result cannot follow from section 99.

Section 99 is explicable only upon the theory (not a difficult one to accept) that the caution of the Legislature exceeded its understanding. Section 99 was altogether unnecessary, almost as unnecessary as it would be to legislate that a statute applicable eo nomine to horses does not extend to cows. And if that were done it certainly would not follow that the statute applicable to horses also included sheep. No doubt an "exception may properly be considered in ascertaining the true meaning of a statute, (but) it cannot put into a previous provision something that was not there before." 59 C. J. 1093. And it is an elementary rule that exceptions from the general policy of a statute will be strictly construed, and that they will not be so construed as to destroy the very purpose and meaning of the statute. Spokane & I. E. R. Co. v. United States, 241 U. S. 344, 348, 36 S. Ct. 668, 60 L. Ed. 1037.

As for the dictum of the Kansas City Court of Appeals, quoted supra, it is enough to say first of all that it is dictum only, and, secondly, that if it were more it would not be binding here, since that court is not in Missouri an appellate court of last resort and final jurisdiction.

I do not discuss decisions in other states in connection with the present question. They turn upon the statutes of those states. This question is to be resolved in the light of the Missouri statutes. As I construe those statutes, even if one has a right of action in tort against an insurance company for an unreasonable delay in acting on an application for a contract of insurance, it is not such a tort as survives the death of the person wronged so that it may be prosecuted on behalf of his estate by the executors.

### Order.

The demurrer to plaintiffs' petition, having been duly considered and the court being fully advised in the premises, is sustained.

It is so ordered.