**BURKS v. COLONIAL LIFE & ACCIDENT INS. CO.**

**No. 13713.**

United States Court of Appeals
Fifth Circuit.

Nov. 30, 1951.

---

Wallace Miller, Jr., Macon, Ga., John J. Flynt, Jr., Griffin, Ga., for appellant.

S. Augustus Black, Columbia, S. C., R. Lanier Anderson, Jr., Macon, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

In the trial Court both the appellant, the plaintiff, and the appellee, the defendant moved for summary judgments. In a well considered opinion, set forth in the margin,[1] the trial judge fully and fairly

---

1. "The undisputed facts of this case, as disclosed by the pleadings and the affidavits filed in connection with the motions for summary judgment here under consideration, are, as follows:

"On November 15, 1949, David Halsey Burks filed an application for an accident insurance policy with G. C. Pool, general agent of the Colonial Life and Accident Insurance Company, defendant herein, and gave said Pool a check in the amount of the first monthly premium. The application, which was signed by Burks and Pool, named the applicant's wife, plaintiff herein, as beneficiary, and it contained the following provision:

"'I further agree that this insurance shall not be in force until the application is accepted and Policy issued by the Company nor until Policy is delivered to and accepted by the applicant while in sound health and free from injury.'

"This application reached the Home Office of the Defendant Company in Columbia, S. C. on November 21. The check of the applicant was deposited to the account of the Defendant on November 25. On November 29, the application was tentatively disapproved by an employee of the Company in its Home Office. This action was reversed on November 30 or December 1 by the Vice-President and Treasurer of the Defendant Company, who placed on the application the letters 'OK', followed by his initials.

"The application then went to the policy-issuing department of the Defendant Company on Friday, December 2, or Monday, December 5. The policy-issuing department does not work on Saturday or Sunday. On December 3, the applicant was killed by accidental means within the coverage of the type of policy for which he had applied. On December 5, the policy applied for was prepared, dated and countersigned. Before mailing said policy, the Defendant was informed of the applicant's death, and the policy was retained in the Home Office. On that same date, December 5, Defendant refunded to applicant's estate the sum of $10, that being the amount of the check previously deposited by the Defendant. This check was later returned to the Defendant, who has made a continuing tender of this amount. The policy, as finally prepared on December 5, did not contain a copy of the application nor seek to incorporate said application by reference thereto. Said policy contained no condition requiring delivery or acceptance but stated that the Defendant insured the applicant 'from Noon, Standard Time,—of the day this policy is dated.' The policy was dated December 5, 1949.

"In addition to those undisputed facts, Plaintiff alleges and Defendant denies

stated the material facts which had been developed by affidavits for the purpose of the respective motions of the parties, and, reviewing and applying the controlling law, sustained the motion of the defendant. Upon our consideration of the claims of error urged upon this appeal our conclusions both as to the controlling issues in-

that G. C. Pool, general agent of the Defendant, advised the applicant, at the time of his application 'that if the home office cashed check dated November 15, 1949, it would mean the company had accepted him, and his policy would be forthcoming and would be dated November 15, 1949.'

"It is further alleged that it was agreed between Pool and Burks that the check which the Defendant later deposited was payment of the policy premium for the period November 15 to December 15, and that if accepted, he would be covered during that period. Plaintiff further alleges that, prior to his death, the applicant learned that his check had been cashed, and this is not denied.

"Plaintiff, wife of the applicant, was named as beneficiary in the application. She filed this suit in four counts against the Defendant Company after Defendant refused to pay her the face amount of the policy. Defendant filed its motion for summary judgment on all counts, together with supporting affidavits. Plaintiff filed her motion for summary judgment on Counts I and IV.

"Since the aforementioned allegations concerning the representations of Pool are in dispute, should they be material to the issues involved, the pleadings and affidavits would then present a jury question.

"Count I of the Plaintiff's petition seeks specific performance of an alleged contract between Burks and the Defendant Company. Count II seeks the recovery of damages for breach of the alleged contract. Count IV asks reformation of the policy which was prepared after Burks' death, by changing the date thereof to a date prior to Burks' death, thereby making the policy effective prior to the death of the applicant. Count III seeks damages for negligence of the Defendant and, being based on an entirely different theory, it will be treated separately.

"While Counts I, II and IV differ as to remedy, all are based on an alleged contract or agreement. They can best be treated by discussing them together.

"It is a basic principle of contracts law that a contract must be based upon an offer and an acceptance thereof. The acceptance of the offer may consist of words or acts, but it must be an ac-

ceptance of the offer as made. Any acceptance on terms which do not conform with the offer is but a counter offer and itself must then be accepted before it can ripen into a contract. Maddox v. Life and Casualty Ins. Co. of Tenn., 79 Ga.App. 164, 172, [53 S.E.2d 235].

"In deciding these motions, we must first determine whether or not there could be a contract and, if so, what were the terms of the contract.

"The facts of this case reveal but one offer by the applicant, Burks. That offer is contained in his written application for a policy of insurance. If there was a contract between the parties, it must, therefore, be based upon this offer and an acceptance of it. The offer by Burks was in fact a conditional one. He offered to buy a policy of insurance upon the express condition that such policy should not be binding upon either party until issued by the Company and accepted by him while in life and good health. If this offer was ever accepted by the defendant (and the Plaintiff contends that it was accepted either by cashing of Burks' check, or by placing OK upon the application), it would give rise only to a conditional contract. Liability on such contract would, by its own terms, be conditioned upon the condition precedent stated in the applicant's own application, namely issuance of the policy and acceptance thereof by Burks while in life and good health. Reserve Loan Life Ins. Co. v. Phillips, Admr., 156 Ga. 372, 378 [119 S.E. 315]. At the time of the death of Burks, this condition precedent had not been satisfied. Thus, neither party was unconditionally bound by any agreement at that time. Certainly nothing happening subsequent to the death of Burks could create a contract where there was none. At the time of Burks' death the policy had not been issued or accepted. Where an application contains a condition precedent, that condition must be performed before the application can ripen into an agreement, binding on the parties, with rights and liabilities incident thereto. Metropolitan Life Ins. Co. v. Thompson, 20 Ga.App. 706, [93 S.E. 299]; Maddox v. Life and Casualty Ins. Co. of Tenn., supra.

"While the above statement would seem to dispose of Counts I and II, the Plaintiff has made other contentions

volved in Counts I, II and IV of the complaint, and as to the decisions of the Court of Appeals and the Supreme Court of Georgia which in point and principle control the decision of such issues adversely to the contentions of the appellant coincide in all material respects with those expressed by the trial court. There is consequently which the Court feels should be answered.

"The Plaintiff relies upon the oral representations of Pool, Defendant's agent, in seeking to alter the terms of the alleged agreement. Plaintiff alleges that Pool said that the policy would be binding from the date of the application, if said application was accepted, and that the cashing of Burks' check would evidence an acceptance. This theory admits that the agent Pool himself did not accept the application for the Company, but simply made representations to him as to the effective date of the policy. It is clear that Pool's statements cannot be made a part of the alleged agreement between Burks and the Defendant. Insurance contracts in Georgia must be in writing. Code of Georgia 1933, Sections 56–801, 56–911. When any contract is reduced to writing, as by a written offer and acceptance, said contract is conclusively presumed to contain all the terms thereof. All previous negotiations are merged therein and no oral representations may be relied upon to vary its terms. Mitchiner v. Union Central Life Ins. Co., 185 Ga. 194, [194 S.E. 530]; Wheeler v. Fidelity and Casualty Co., 129 Ga. 237, [58 S.E. 709].

"The Plaintiff next contends that if such representations could not become a part of the agreement, they were nevertheless effective as a waiver of the terms thereof. I think this position is unsound. There is no question of waiver of terms agreed upon by the parties. The question is rather what was the agreement between the parties, if any. The terms of Burks' offer cannot be altered by oral representations. Maddox v. Life and Casualty Ins. Co. of Tenn., supra. Furthermore, the condition contained in the application not only gave certain rights to the Company but it reserved certain definite rights to the applicant, namely the right to accept or refuse any policy issued by the Company. Since it was a right belonging to both parties, it was not something which one party could waive and thus create an unconditional obligation out of a conditional one. Thus, in my view, the oral representations of Pool in no wise alter the case.

"Plaintiff next contends that, though no policy issued during Burks' life, the Court, acting in equity, should 'consider as done that which ought to have been done.' Applying this maxim, the plaintiff would ask the Court to consider that the policy had issued. Plaintiff then avers that such policy when issued would not have contained the condition contained in the application, but would have been binding as of the date of issue. I think this theory is without merit. To consider as done that which ought to have been done, the Court must determine what ought to have been done. To do so the Court is necessarily relegated to the application and the acceptance of it, if any. This gave rise to no duty on the Defendant to issue a policy binding on both parties from the date of issue. It is doubted that the Defendant even had the power to issue an unconditionally binding policy, under the terms of the application. Certainly, on the basis of the application as made, there was no duty to do so. Therefore, application of the above stated equitable maxim would not accomplish the result sought by the Plaintiff. The mutual assent to the terms of a contract must be the work of the parties themselves. The law cannot supply it for them. Mutual Life Ins. Co. of N. Y. v. Young, [23 Wall. 85], 90 U.S. 85, [23 L.Ed. 152]; Maddox v. Life and Casualty Ins. Co. of Tenn., supra.

"If the above reasoning is sound, this would seem to dispose of the Plaintiff's contentions with respect to Counts I and II. It also, for practical purposes, disposes of Count IV. If there was no agreement requiring the defendant to issue a binding policy prior to Burks' death, it would seem too clear for argument that nothing happening thereafter could alter those rights. Plaintiff contends that the policy, which actually issued under date of December 5, 1949, should be reformed so as to be dated prior to Burks' death. Plaintiff contends that the provisions of the application should be disregarded in considering this Count. She urges to support this view that the policy as completed did not contain a copy of the application or any provision similar to that in the application. I think this contention is patently erroneous. It is true that the Georgia law provides that, unless the application is attached to and accompanying the policy, no such application shall be received in evi-

no necessity for any other or further exposition why the judgment of the trial Court upon these counts is correct. However, as to that portion of the opinion discussing and ruling upon the merits of the Third Count of the petition we refrain from any expression of approval or disapproval, since we find this to be unneces-

dence as part of the policy, or as an independent contract in any controversy between the parties to or interested in said policy, nor shall such application be considered a part of the policy or contract between the parties. Code of Georgia, 1933, Section 56-904. This section, however, is applicable only in a controversy between parties to a policy and there cannot be parties to a policy when no policy has issued. It would seem clear that this is but an extension of the rule that all previous negotiations merge into the written contract when executed. It would apply here, had a policy issued during the life of Burks. It would seem clear that the rights as they existed at the time of Burks' death were fixed and could not be changed by anything which happened after one of the parties had died. Since the policy had not issued at the time of Burks' death, the application was still controlling at that time. Maddox v. Life and Casualty Ins. Co. of Tenn., supra. Assuming that a policy which issued after Burks' death could bind the parties, it would have to conform to Burks' offer to be binding. Otherwise, it would be a counter offer only and would itself require acceptance by Burks before it could be effective. Boswell v. Gulf Life Ins. Co., 197 Ga. 269, 272, [29 S.E.2d 71].

"Even if this policy could be considered a contract between the parties, its issuance with an effective date different from that contemplated by the offer would not give rise to an action for reformation. Georgia Courts have repeatedly held that the effective date is a material portion of the policy and, if it is not in accordance with that contemplated in the offer, it is a counter offer and that such policy cannot be reformed by changing said date.

" 'A policy bearing a given date, and purporting to insure for the future only, cannot be made the basis of an action to recover for a loss occurring on a prior date. In this case, the application amounted only to an offer, and the Company was free either to accept or reject it entirely. Accordingly, in acting upon such application, it could fix a future date on which the policy would become effective. If the policy as thus issued, either because of its date or for other reason, did not conform to the application, it would constitute only a counter offer, and could not be reformed merely because of such variation.' Boswell v. Gulf Life Ins. Co., supra.

"The advance payment of premiums does not alter the application of the above stated principles in any way. Maddox v. Life and Casualty Ins. Co. of Tenn., supra.

"The foregoing would seem to dispose of Counts I, II and IV, and the Court feels that under the pleadings and affidavits submitted, the Plaintiff could not recover on any of these counts under any view of the facts.

"As stated above, Count III is in tort and seeks damages for the Defendant's negligence in failing to act promptly with regards to the application. Plaintiff contends that Defendant should have promptly accepted or rejected the application and notified the Plaintiff of its action. Plaintiff contends that the delay of the Defendant was unreasonable and prevented the applicant from securing other insurance, which he would have done, had he known he was not covered.

"Insofar as this Count is concerned, this would seem to be a case of first impression in Georgia. It is elementary that there can be no tort without a breach of a legal duty or invasion of a private right. Munger v. Equitable Life Assur. Soc. of the U. S., [D.C.,] 2 F. Supp. 914, (1., 2.). In the absence of statute (and we find no such Georgia statute), before the Court could say that the forwarding of an application to the Defendant placed on the Defendant a duty to act promptly or even to act at all, it would be necessary at least to find that insurance companies were affected with such a public interest as to give rise to such legal duty. No Georgia Court decision to this effect has come to the Court's attention, and this Court is unwilling to so hold.

"This Court is of the opinion that the mere filing of an application for insurance with Defendant Company did not place on the Defendant any duty to act reasonably or promptly, or even to act. This being true, the Defendant's conduct did not amount to a breach of duty so as to constitute a tort. Many cases from other jurisdictions have been cited on this point. The reasoning of those refusing to find a breach of duty on the basis of such facts seems more consistent and logical. Metropolitan Life

sary in the present case. The allegations of this count of the complaint, together with the facts, when considered in the light of the law already held properly applicable to the transaction now under review, are necessarily confined in material substance to the claim of negligence in failing to act with reasonable promptness in either accepting or rejecting the application and in notifying the plaintiff of its action. While we fully recognize and give obedience to the fundamental principle that the existence of negligence and the determination of what constitutes a "reasonable time" are generally for determination as questions of fact upon consideration of pertinent circumstances, we are nevertheless of the firm opinion that under the precise facts and circumstances of this case a finding of negligence based upon reasonable delay would not be legally supportable. The minds of reasonable men could not differ on these facts. We are therefore not required to determine, or to express it more accurately, declare, the law of Georgia which would be applicable if a factual basis for such finding existed. The Georgia Courts do not appear to have passed upon the question and, since we find at the beginning of our consideration of it the existence of an insurmountable bar to any recovery by the complainant a discussion of the legal merits, otherwise, of this claim could be only academic. We therefore refrain and, setting forth the trial Court's opinion upon this feature of the case only for the purpose of completeness of quotation, place our decision of affirmance of the ruling of the trial Court upon the third count of the complaint upon the grounds which we have stated.

Judgment affirmed.

Ins. Co. v. Brady, 95 Ind.App. 564, 174 N.E. 99, 100, 102–103. The Court is especially impressed with the reasoning in the opinion in Munger v. Equitable Life Assur. Soc. of the U. S., supra.

"Even if the action of the Defendant amounted to a breach of duty and constituted a tort, it would not entitle the Plaintiff to recover here. The Court is of the opinion that, if there was a tort, it was a tort to the applicant only and not to the beneficiary. This is supported, in my opinion, by the weight of authority. Duffy v. Bankers' Life Ass'n, 160 Iowa 19, 139 N.W. 1087; Vuke Stray v. Western Life Ins. Co. [163 Wash. 329], 300 P. 1046, [75 A.L.R. 950]. Thus, if the Defendant's delay gave rise to any cause of action, it would be in favor of Burks. Under the Georgia law, such a right of action would not survive the death of Burks. Code of Georgia, 1933, Section 3–505; Frazier v. Georgia Railroad, 101 Ga. 77(1) [28 S.E. 662]. (While this case was decided prior to the 1935 amendment to the statute, that amendment applies only to cases where the defendant dies before suit is filed). Under this rule, neither his administrator, his heirs at law, or the beneficiary under the policy could recover. Thus, while the Court is of the opinion that the Defendant has not breached any legal duty to any one, even if this be erroneous, such breach was a tort only as to Burks and the right of action therefor died with him.

"The case of N. Y. Life Ins. Co. v. Babcock, 104 Ga. 67, [30 S.E. 273, 42 L.R.A. 88], relied on by the Plaintiff in connection with his contractual theory, differs materially from the case at bar. This case correctly holds that the Georgia law does not require delivery as an essential part of the execution of a contract of insurance. It admits, however, that the parties themselves may make delivery a condition precedent to liability on the contract. This was a case where nothing remained to be done by the applicant (there was no requirement that he accept the policy) and turned instead on whether there was in fact a delivery. In the case at bar, it is clear that there was no delivery to or acceptance by the applicant. Other cases cited by the plaintiff also differ materially from that at bar.

"Having treated all of the contentions of the Plaintiff, it is clear that the Plaintiff cannot prevail on any theory of the case and the Defendant is entitled to a summary judgment.

"Plaintiff's motion for a summary judgment is Denied.

"Defendant's motion for summary judgment on each count is Granted."